Argued September 11, 1969, affirmed with minor
modifications and remanded May 13, 1970

# BEAUDRY, *Respondent, v.* WINCHESTER
# PLYWOOD COMPANY ET AL, *Appellants.*

469 P2d 25

*Eldon F. Caley,* Roseburg, argued the cause for appellants. With him on the briefs were Long, Neuner, Dole & Caley, Roseburg.

*William A. Babcock,* Springfield, argued the cause for respondent. With him on the brief were A. C. Roll, Roseburg, and Babcock & Ackerman, Springfield.

Before PERRY*, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN,** DENECKE and HOLMAN, Justices.

HOLMAN, J.

Claimant contends he incurred a compensable occupational disease during the course of his employment. His claim was denied by his direct responsibility employer and its insurance company, who are the de-

---

\* Perry, C. J., did not participate in this decision.
\*\* Goodwin, J., resigned December 19, 1969.

fendants. Claimant requested a hearing on his rejected claim. Pursuant to such hearing, an order was entered by the hearing officer of the Workmen's Compensation Board, holding that claimant had incurred a compensable occupational disease and directing the employer to begin the payment of compensation.

The order of the hearing officer was rejected by the defendants in accordance with ORS 656.808, and a notice of appeal was filed pursuant to ORS 656.810(4). The principal issue raised by the defendants in their appeal to the circuit court was whether the facts justified the conclusion of the hearing officer that the claimant incurred an occupational disease in the course of his employment. More specifically, the question was whether a work-induced aggravation of pre-existing bursitis of the left hip was a compensable occupational disease as defined by ORS 656.802 (1)(a).

The circuit court entered an order finding that the claimant had contracted a compensable occupational disease within the meaning of the statute, affirmed the order of the hearing officer, and awarded claimant an attorney's fee for the circuit court proceedings. The employer and its insurance company instituted this appeal from the circuit court's order.

■■ Before proceeding to the issues raised by the appeal, this court must first determine whether the defendants have any right to appeal to both the circuit court and appellate courts. ORS 656.807(4) provides as follows:

"The procedure for allowing, denying, processing or closing occupational disease claims shall be the same as provided for accidental injuries under ORS 656.001 to 656.794, *except* that any review of the claim after a hearing by the hearing officer

shall be in accordance with ORS 656.808 to 656.814." (Emphasis ours.)

ORS 656.808[1] provides for a rejection by the claimant or the employer if either is dissatisfied with the hearing officer's final order and that such rejection acts as an appeal to the medical board of review. ORS 656.812(2)[2] provides for certain questions to be answered by the medical board of review concerning the claimant's present and past physical condition and whether he suffers from an occupational disease or infection. ORS 656.810(4)[3] provides that in any case involving an issue of the timeliness of filing a claim or other legal issue not to be determined by the medical board of review, the issue involved shall be referred to the circuit court for determination. The last two cited

---

[1] ORS 656.808. "A final order of the hearing officer in any claim involving occupational disease may be rejected by the claimant or employer, in writing, filed at the office of the Workmen's Compensation Board within 90 days after the date of such order. Such rejection acts as an appeal to the medical board of review."

[2] ORS 656.812 (2). "Such findings, when made, shall be signed by at least two members of the medical board of review and shall contain the answers to the following questions:

"(a) Does claimant suffer from an occupational disease or infection? If so, what?

"(b) When was such disease or infection, if any, contracted, and approximately how long has claimant suffered therefrom?

"(c) Has such disease or infection, if any, been caused by and did it arise out of and in the course of claimant's regular actual employment in such industrial process, trade or occupation?

"(d) Is such disease, if any, disabling to the claimant?

"(e) If so, to what degree is claimant disabled by such occupational disease?"

[3] ORS 656.810(4). "In any case involving an issue of the timeliness of filing a claim or other legal issue not to be determined by the medical board of review, the Workmen's Compensation Board shall within 30 days of the filing of the rejection certify the claim record to the circuit court of the county where the disease was incurred; and the issue shall be determined by the court without jury based upon such record and such other evidence as in the court's discretion may be required."

statutes have been construed to mean that the review of the medical board of review is limited to the matters involved in answering the questions propounded in ORS 656.812(2). *White v. State Ind. Acc. Com.*, 227 Or 306, 318, 362 P2d 302 (1961). It is not clear whether the court there recognized that matters of both law and fact are necessarily involved in the answers. The questions contain the language of the statutory definition of occupational disease. The scope and meaning of this definition are matters of law and not of fact. As pointed out in *White*, the medical board of review is composed of medically, and not legally, trained personnel. Therefore, we believe it is unrealistic to assume that the legislature's intention was for members of the medical board of review to attempt to solve other than factual matters relating to the field of medicine. We hold that the principal question in this case, which concerns the scope and meaning of the statutory definition of occupational disease, was a proper matter for the cognizance of the circuit court.

■ No specific provision for a further appeal from the circuit court to the appellate courts is contained in the statutory sections mentioned in the exception in ORS 656.807(4). However, ORS 656.814④ provides that the findings of the medical board of review are final and binding insofar as any questions are concerned which the board is authorized to determine, and there is no corresponding provision which specifically limits further appeal of the circuit court's determination. We have come to the conclusion that the exception in ORS 656.807(4) was intended only to encompass a review

---

④ ORS 656.814. "The findings of the medical board of review are final and binding and shall be filed with the Workmen's Compensation Board within 60 days after appointment of the third member. A copy thereof shall be mailed to the parties."

of the hearing officer's determination, and that the balance of the subsection authorizes review of a circuit court's decision by an appellate court in accordance with ORS 656.301(1)[9], which governs the review afforded in cases of accidental injuries.

■ Because no exact forms or procedures are set forth to govern the appeal of questions to the circuit court, the trial judge was understandably somewhat uncertain whether the defendants could raise questions before him which had not been set forth in their notice of appeal to the circuit court. Subsequent to the notice of appeal, defendants filed another document entitled "Petition for Decision and Instruction on Certification," in which they set forth issues in addition to those included in the notice of appeal. We believe the better practice is to require specification in the original notice of appeal of all questions to be subsequently considered. The party prevailing before the hearing officer will then be able to terminate the appeal without further proceedings by a motion to dismiss, if the matters sought to be appealed are not within the cognizance of the circuit court but are within that of the medical board of review. Orderly procedure requires such practice, but we will only enforce such requirement prospectively due to the lack of specificity in the statute. The trial judge considered all matters raised and we will do the same.

■ The employer contends the hearing officer's order is void and in excess of his jurisdiction because it was entered without the findings required by ORS 656.812(2). The statute requires these findings to be made by the medical board of review and not by the

---

[9] ORS 656.301(1). "Appeals may be taken from the judgment of the circuit court, the scope of review to be the same as that of the circuit court."

hearing officer. ORS 656.807(4) specifies that the procedure for processing occupational disease claims by the hearing officer shall be the same as that for accidental injury claims. Assuming that the hearing officer must make findings of fact, the statutes dealing with accidental injury claims nowhere require that he make the specific findings exacted of the medical board of review by ORS 656.812(2). We feel that any requirement upon the hearing officer to make findings of fact was satisfied by the hearing officer's "Findings, Opinion and Order" filed in the present case, which was a scholarly and comprehensive treatment of the issues raised. Read as a whole, it contains sufficient findings of fact upon which to base a review of the issues.

As previously indicated, the principal issue in the case is defendants' contention that the Oregon definition of occupational disease requires "the work exposure [to] be the original or underlying etiological cause of the disease itself." They claim the definition does not encompass the aggravation of a pre-existing condition and that work-induced disability does not make the disease "occupational."

The treating physician testified that claimant aggravated a pre-existing bursitis in his left hip joint which produced disability. Claimant's pre-existing condition was aggravated by his operation of a piece of machinery which vibrated the platform upon which he was required to stand during his work shift. The machinery consisted of a blade driven by an air cylinder which cut plywood veneer.

ORS 656.802(1)(a) defines an occupational disease as follows:

"(a) Any disease or infection which arises out of and in the scope of the employment, and to which

an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein."

■■ Disease or infection becomes relevant in the statutory plan for the protection of workmen and their dependents only if it interferes with the employee's ability to work or causes his death. Therefore, disease or infection which "arises out of and in the scope of the employment" must contemplate disease or infection of sufficient gravity to be disabling. We believe the statutory definition was not intended to be limited in its scope to disease or infection which had its inception in the employment. ORS 656.804(1)[6] specifies that an occupational disease, as defined, is to be "considered an injury" for the employees of employers who come under the accidental injury portion of the law. It is clear that under the accidental injury portion of the law a compensable injury occurs when an accidental injury accelerates or aggravates a pre-existing disease, causing disability or death,[7] even though the definition of a compensable injury is "* * * an accidental injury * * * arising out of and in the course of employment * * *." ORS 656.002(6).

While the statutory enactments of the various states may be somewhat dissimilar, most courts and other authorities have come to a similar conclusion. The following is a quotation from 1A Larson, Workmen's Compensation Law § 41.62:

"Very closely related to the question of preexisting allergy is that of preexisting weakness, disease,

---

[6] ORS 656.804(1). "An occupational disease, as defined in ORS 656.802, is considered an injury for employes of employers who have come under ORS 656.001 to 656.794, except as otherwise provided in ORS 656.802 to 656.824."

[7] Kinney v. S.I.A.C., 245 Or 543, 423 P2d 186 (1967).

or susceptibility. Most courts treat this problem the same as that of allergies, and hold that when distinctive employment hazards act upon these pre-existing conditions to produce a disabling disease, the result is an occupational disease. Thus when admittedly nonindustrial pulmonary emphysema was aggravated by employment dust and fumes, Oklahoma concluded that the end product was an occupational disease. New Jersey struggled with the problem, and finally concluded that aggravation of a nonoccupational fungoid condition by repeated exposure to benzine constituted a compensable disease. New York has accepted as compensable a low-back strain caused by continued lifting super-imposed upon a congenitally weak back, Dupuy-tren's contracture in the palms of hands, possibly due in part to a physiological defect, and aggrava-tion of preexisting arteriosclerotic vascular disease. Delaware has compensated for aggravation of a sandblaster's Boeck's sarcoid disease. And Mich-igan has added 'tennis elbow' to this category in-volving preexisting susceptibility.

"It can readily be seen that, as this process has gone forward, the line between occupational disease and aggravation of preexisting disease or weakness has become blurred. The ultimate working rule that seems to emerge is simply that a disability which would be held to arise out of the employment under the tests of increased risk and aggravation of a preexisting condition will be treated as an occupa-tional disease." (Footnotes omitted.)

For cases in accordance with Larson's view, *see*: *Zallea Bros. and U.S.F.&G. Co. v. Cooper*, 3 Storey 168, 53 Del 168, 166 A2d 723 (1960); *Giambattista v. Thomas A. Edison*, 32 NJ Super 103, 107 A2d 801 (1954); and *National Zinc Company v. Hainline*, 360 P2d 236 (Okla 1961). Delaware, in particular, has a statute similar to Oregon's.

Contrary to *Larson*, the law in the state of New

York now seems to be that aggravation of a pre-existing condition cannot be an occupational disease. *See Matter of Detenbeck v. General Motors Corp.*, 309 NY 558, 132 NE2d 840 (1956); *Matter of Dorman v. New York State Dept. of Public Works*, 22 App Div 2d 725, 253 NYS2d 243 (1964); and *Matter of Conroy v. Rupert Fish Co.*, 8 App Div 2d 553, 183 NYS2d 332 (1959).

██ Defendants also contend that the alleged aggravating exposure came not from claimant's work, but from the place where he worked, because his only activity consisted of manipulating a group of switches with his fingers. They contend that the legislature intended to limit compensation to diseases caused by actual work exertion. Defendants cite as authority for their position the words of the statute requiring that the claimant's condition arise out of something he is exposed to during his "regular actual employment." We see no logical reason to so limit the meaning of occupational disease. If a truck driver derives a disabling kidney disease from the jolting of the truck rather than from the turning of the steering wheel, his condition no less results from something he is exposed to during his "regular actual employment." Defendants cite cases from other jurisdictions which hold that bursitis is an occupational disease in situations in which it is caused by bodily exertion. We do not understand why these cases would necessarily exclude as an occupational disease all bursitis caused or aggravated by the usual aspects of the claimant's work other than by his manual exertion. The operation of heavy machinery often causes vibration. Defendants offer a distinction without a relevant difference.

██ Defendants argue that claimant's disease process was one to which he was ordinarily subjected

outside his "regular actual employment," because, according to his doctor, the physical activity of changing weight from one leg to the other in standing, walking, and going up and down stairs could also aggravate claimant's condition. While other-than-work activities could aggravate claimant's condition, a person is not ordinarily subjected in non-work related activities to standing for eight hours upon a vibrating base. It was the opinion of claimant's doctor that claimant's "most traumatizing activity" was standing during his work shift while subject to vibration. It is our opinion that there was sufficient evidence for the hearing officer to find that claimant's condition, which prevented him from working, was the result of a situation to which he was not ordinarily subjected other than in the course of his regular actual employment. The language, "is peculiar to the industrial process, trade or occupation in each instance," was eliminated from the definition of occupational disease by Oregon Laws 1959, ch 351. *Larson*, at section 41.50, states as follows:

"However, the conditions of employment which distinguish occupational diseases from ordinary diseases of life need not be unusual chemicals, fumes, and the like. They may be distinctive because familiar harmful elements are present in unusual degree * * *."

Lastly, defendants contend the trial court erred in allowing claimant an attorney's fee in the proceeding before it and also contend claimant's motion for an attorney's fee in this court should not be allowed. The basis for their contentions is the language of the before-mentioned exception in ORS 656.807(4), which provides that "any review of the claim after a hearing by the hearing officer shall be in accordance with ORS 656.808 to 656.814." They point out that there is no

provision for attorneys' fees in the designated statutes. Insofar as the appeal to this court is concerned, we already have held in this opinion that such an appeal is authorized by ORS 656.301. Subsection 2® of that statute authorizes the allowance of attorneys' fees upon appeal from a circuit court and claimant is entitled to such fees in this case.

■ The allowance of fees in the appeal from the hearing officer's decision to the circuit court is not so plain. We have held in this opinion that the exception in ORS 656.807(4) covers review in circuit court, and there is no provision for attorneys' fees in the statutory sections mentioned in the exception. To say the least, the occupational disease law is not a masterful job of statutory drafting. We suspect its obvious deficiencies are the result of last-minute compromises between labor and industry during legislative sessions. It is unreasonable to believe that the legislature did not intend workmen coming within the coverage of the law to be entitled to attorneys' fees in the questioned instance in view of the statutory provision for fees for successful claimants in almost all other stages of proceedings in both accidental injury and occupational disease cases. The legislature must have intended that

® ORS 656.301(2). "In case of an appeal by the State Accident Insurance Fund or employer from an adverse decision of the circuit court, if the judgment of the circuit court is affirmed, the claimant shall be allowed attorneys' fees to be fixed by the court and to be paid by the party initiating the appeal, in addition to the compensation."

® ORS 656.382(2). "If a request for hearing, request for review or court appeal is initiated by an employer or the fund, and the hearing officer, board or court finds that the compensation awarded to a claimant should not be disallowed or reduced, the employer or fund shall be required to pay to the claimant or his attorney a reasonable attorney's fee in an amount set by the hearing officer, board or the court for legal representation by an attorney for the claimant at the hearing, review or appeal."

the provisions of ORS 656.382(2)®, which provide for attorneys' fees in proceedings in circuit court in the case of accidental injury, were invoked by the provisions of ORS 656.804(1). As pointed out in *White v. State Ind. Acc. Com.*, *supra* at 325, "[t]he Occupational Disease Act is not independent of the Workmen's Compensation Act but is complementary or supplementary thereto."

The trial judge entered an order finding that the claimant had contracted a compensable occupational disease and affirmed the order of the hearing officer. We modify this order in that we hold that there were sufficient evidence and findings *from which the hearing officer could hold* that claimant suffered a compensable occupational disease. The review of the circuit court and the appellate courts is limited to questions not within the cognizance of the medical board of review. Our views, as well as the circuit court's, concerning whether the hearing officer correctly decided the medical facts are irrelevant as long as there were sufficient evidence and findings to sustain his conclusion. Defendants rejected the findings and conclusion of the hearing officer and are still entitled to a de novo hearing by the medical board of review on the medical facts. The board's medical factual findings and conclusion may be entirely different from the hearing officer's. It seems odd that the law, as drawn, provides for appellate review of the legal problems before the medical facts are finally determined by the medical board of review. Legal problems can change with the facts. However, the intention of the legislature is clear because ORS 656.810(4) specifies that in the case of an appeal of a legal issue, the Workmen's Compensation Board shall,

within 30 days of the filing of the rejection of the hearing officer's final order, certify the claim record to the circuit court. The legislature surely did not contemplate that the appointment of the board of review, the board's examination of the record and the patient, and the writing of a report should all take place within such 30-day period.

■ We hold that there were sufficient evidence and findings to sustain the conclusion of the hearing officer that claimant suffered a compensable occupational disease, and that claimant is entitled to a reasonable attorney's fee in this court and in circuit court. We set the sum of $750 as a reasonable attorney's fee to be allowed claimant in this court. The matter is remanded for further proceedings before the medical board of review, as is required by defendants' rejection of the hearing officer's order.

McALLISTER, J., dissenting.

I cannot concur in the majority's holding that the legislature meant something other than what it said when it directed the medical board of review to answer the question "Does claimant suffer from an occupational disease or infection?" This court has previously said that the issue of the existence of an occupational disease is for the medical board. *White v. State Ind. Acc. Com.*, 227 Or 306, 329, 362 P2d 302 (1961). I think that statement was correct, and that the qualifications in the majority opinion are unnecessary and unjustified.

Prior to 1959, the corresponding question for the medical board was whether the claimant suffered from "a disease or infection." Laws of 1943, ch 442, § 7. Other questions for the board to answer were in the language of the statutory definition of occupational

disease.① In 1959 the legislature expressly directed the board to make a finding as to whether claimant suffered from an *occupational* disease. Laws of 1959, ch 351, § 4. At the same time, review was divided between the medical board and the circuit court, the latter having jurisdiction to review "an issue of the timeliness of filing a claim or *other legal issue not to be determined by the medical board of review.*" *Id.*, § 3. (Emphasis added.) This language, in my opinion, makes it unimportant whether the issue of occupational disease is purely factual, or a mixed question of law and fact. It is an issue expressly entrusted by the legislature to the medical board; only a legal issue which is "not to be determined by the medical board of review" is within the circuit court's jurisdiction.

The legislative intent to limit judicial review of occupational disease claims is obvious. The occupational disease law was enacted in 1943, at a time when an accidental injury claimant under the existing laws had a right to a jury trial if his claim was denied. By contrast the occupational disease statutes provided only for review by the medical board, which was to pass upon *every issue* involved in the claim and whose find-

---

① Section 2 defined occupational disease to mean "Any disease or infection which is peculiar to the industrial process, trade or occupation in each instance and which arises out of and in the scope of the employment, and to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein."

Section 7 listed the questions which the medical board of review was to answer. Among those questions were the following:

Does claimant suffer from a disease or infection? If so, what?

Is such disease or infection, if any, peculiar to the industrial process, trade or occupation in which claimant has been last employed?

Has such disease or infection, if any, been caused by and did it arise out of and in the course of claimant's regular actual employment in such industrial process, trade or occupation?

ings "shall be final and binding." In the *White* case we construed the 1943 provisions as not precluding court review of purely legal issues. At the time that case was decided, the legislature had already made the 1959 amendments dividing review jurisdiction between the medical board and the circuit court. We felt that our construction of the 1943 provisions was harmonious with the 1959 amendments.

In *Pavlicek v. S.I.A.C.*, 235 Or 490, 385 P2d 159 (1963), we held that the provisions authorizing review by the medical board and making its findings final and binding were not severable from the rest of the occupational disease law. It is clear from our opinion in that case that we understood the authority of the medical board to include more than merely making factual findings on the medical issues:

> "* * * ORS 656.814 makes the findings of the medical board of review final, i.e., not subject to judicial review. It is this last section which, when read together with the first two [ORS 656.810 and 656.812], invites the question whether the legislature constitutionally may distribute a *judicial function* to an administrative tribunal and then make that tribunal's judgments final. * * *" (Emphasis added.) 235 Or at 494.

Recognizing that the statutes gave the medical board a judicial function to perform, we noted their importance in the statutory scheme:

> "* * * [I]t is apparent that the challenged sections are so essential to the legislative intent that without them the statute would not have been enacted.
>
> "* * * The court is satisfied from a reading of the entire statute that the Assembly would not have enacted an occupational-disease law granting compensation under the terms and conditions found in

the present code unless at the same time it enacted the challenged procedural sections which cover the processing of such claims. * * *" 235 Or at 493-495.

The most recent expression of this legislative intent is found in a 1965 amendment to ORS 656.807, adding subsection (4):

"The procedure for allowing, denying, processing or closing occupational disease claims shall be the same as provided for accidental injuries under ORS 656.002 to 656.590, except that *any review* of the claim after a hearing by the hearing officer shall be in accordance with ORS 656.808 to 656.814." (Emphasis added.) Laws of 1965, ch 285, § 87a.

This amendment was part of an extensive revision of the workmen's compensation laws which engaged the close attention of the legislature. It provides for uniformity of procedure for accidental injury and occupational disease claims in a number of matters, but expressly provides that review is to be governed by the provisions of the occupational disease law alone. And those provisions, as pointed out above, entrust the question of whether the claimant has an occupational disease to the medical board of review. The qualification of the members of the board to decide this question is provided for in ORS 656.820, which constitutes the Dean of the Medical School of the University of Oregon, the State Health Officer and the Workmen's Compensation Board an appointing body to compile the list from which medical boards of review are selected. Those listed are to be:

"* * * [P]hysicians in good professional standing, who may or may not be residents of Oregon and whom the appointing body finds to have acquired expert knowledge of occupational diseases by training and experience * * *."

That the majority has difficulty in fitting its holding into the statutory scheme is illustrated by a circumstance which the opinion characterizes as "odd"— that circuit court review of the legal issues precedes review by the medical board. This procedure is not odd if the jurisdiction of the medical board is left undisturbed as the legislature intended, because then the legal problems facing the circuit court will be entirely distinct from those questions within the competence of the medical board. Under the majority's approach, however, circuit courts will find themselves deciding the legal issues before the relevant facts are finally determined.

The finality of the medical board's findings also compels me to disagree with the majority on another aspect of this case. Even if the major question in this case is within the circuit court's jurisdiction as the majority holds, it is inappropriate for us to decide the case at this time. The case is being remanded for proceedings before the medical board of review. There is no appeal from that body's findings, and, in effect, they can overrule this court's decision by making different findings of fact. I would require that any appeal to this court on the question of whether a claimant is suffering from an occupational disease within the statutory definition await the medical board's examination and findings.