Argued and submitted June 24, 1980, remanded to
Court of Appeals January 20, petition for
attorney fees denied April 7, 1981 (290 Or 849, 626 P2d 881)

In the Matter of the Compensation
of Dianne L. James, Claimant.

JAMES,

*Respondent,*

*v.*

STATE ACCIDENT INSURANCE FUND,

*Petitioner.*

(WCB 77-6474, CA 14647, SC 26888)

614 P2d 565

Darrell E. Bewley, Associate Counsel, Salem, argued the cause for petitioner. With him on the briefs were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, Salem.

Sidney A. Galton, of Galton, Popick & Scott, Portland, argued the cause for respondent. With him on the briefs was David J. Hollander, Portland.

Ridgway K. Foley, of Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, filed the brief amicus curiae on behalf of The Oregon Self-Insurer's Association.

Steven C. Yates, Evohl F. Malagon, and Malagon & Yates, Eugene, filed the brief amicus curiae on behalf of the Oregon Trial Lawyers Association.

Before Denecke, Chief Justice, and Howell,** Lent, Linde, Peterson and Tanzer, Justices.

DENECKE, C. J.

**Howell, J., retired November 30, 1980.

**DENECKE, C. J.**

The claimant seeks Workers' Compensation benefits because of a mental condition allegedly arising out of and in the course of her employment. The Court of Appeals affirmed an award of benefits. 44 Or App 405, 605 P2d 1368 (1980). We granted review in this case and four others involving claims for benefits for a mental condition. *Castro v. SAIF,* 44 Or App 296, 605 P2d 1389 (1980); *Maddox v. SAIF,* 44 Or App 520, 605 P2d 1391 (1980); *Mitchell v. SAIF,* 44 Or App 656, 606 P2d 697 (1980); *Paresi v. SAIF,* 44 Or App 689, 606 P2d 1172 (1980).

The plaintiff is a woman of about 35 years. In October 1976, she became employed by Portland Action Committed Together (PACT) as an Information Referral Counselor. Apparently, PACT was a public agency that deals with the elderly poor.

In the latter part of December 1976 she was publicly and heatedly reprimanded by a supervisor. The reprimand was not justified and the supervisor apologized, but claimant felt the apology was insincere. Sometime later, the same supervisor strongly criticized claimant and rejected a detailed training proposal she had drafted. This same supervisor made other work demands on claimant which she thought were unjustified.

These encounters with her supervisor caused claimant to become increasingly nervous and caused her to take large quantities of a tranquilizer. Claimant felt unable to go to work on June 6, 1977, and on the date of a hearing, June 23, 1978, she had not yet returned to work.

The claimant was treated by Dr. Ward Smith, a psychiatrist by whom she had been treated occasionally for about four years prior to her employment, and Dr. Levine, a psychologist. At the compensation carrier's request the claimant was examined by Dr. Colbach, a psychiatrist. The record contains reports from all three. All three agree that claimant suffers from anxiety and depression neuroses which were caused by or exacerbated by the conduct of claimant's supervisor. Drs. Smith and Levine were also of the opinion that her mental condition prevented her from working. Dr. Colbach did not seem to express an opinion on this issue.

The three experts did not entirely agree on the nature of the causes of stress which disabled claimant. Dr. Colbach wrote:

"It seems like she had a fairly demanding job, but it doesn't sound like it was excessively so. What happened to her is a result primarily of her own personality inadequacies, not because of extremely unreasonable job pressures."

Dr. Levine reported:

"The background for this behavioral tendency to control or avoid potentially threatening circumstances which are no threat at all to the average person, has to do with early and harsh paternal authority, and later on as an adult, a dependence on tranquilizers to alleviate anxiety. She thus did not learn to rely on her own resources to handle everyday tensions outside of home."

Dr. Smith stated:

"In contradistinction to Dr. Colbach's assessment that what occurred at work was not an unusual stress, in my opinion, for this individual, it was indeed an unusual stress * * *."

The referee found that the reprimand and criticism of the supervisor caused claimant to have a compensable injury or disease. He also apparently found that the criticism and reprimand were more than "ordinary work situations" or of the "same kind and level as the stress and strains of every day living." A majority of the Workers' Compensation Board adopted the referee's opinion holding the claimant suffered a compensable injury. The dissenter concluded claimant's symptoms were not "materially and permanently worsened by employment activity." In affirming, the Court of Appeals found "that claimant's underlying pathology was exacerbated and was not simply made symptomatic."

SAIF does not contend that mental illness can never be compensable. It contends this claimant's mental illness is not compensable. In *Kinney v. SIAC,* 245 Or 543, 552-556, 423 P2d 186 (1967), we discussed mental injury cases from other jurisdictions. Kinney had aortic stenosis. He suffered stress on the job which caused him to be disabled. The testimony was that aortic stenosis itself is not disabling, but when stress is imposed on this condition it

causes symptoms which are disabling. In deciding whether Kinney's disablement was a compensable injury we discussed the cases in which "mental stimulus caus[ed] nervous injury." We then stated:

> "So far as these nervous injury cases bear upon the question of the meaning of the word 'injury' we see no significant difference between them and a case of aggravation of an aortic stenosis involving no pathological change." 245 Or at 555.

We went on to hold Kinney suffered an accidental injury which was compensable.

■ SAIF contends the Court of Appeals erred in "failing to apply an objective standard to determine whether the stress was sufficient to cause disability." It apparently suggests that the inquiry should be whether the criticism by the supervisor would cause an average worker such stress as to render the worker unable to work. In injuries or diseases other than mental illness, the inquiry is not would an average worker have incurred the injury or disease? The question is did the claimant worker sustain the injury or disease? Workers' compensation is covered by statute and there is nothing in the Oregon Workers' Compensation Law that would distinguish between the test for mental illness and other kinds of injury or disease.

SAIF makes numerous other contentions, all related to whether claimant's injury or disease arose out of her employment, which the next portion of this opinion answers.

The claimant made her claim on the basis that her condition was either an "accidental injury" or an "occupational disease." ORS 656.005(8); ORS 656.802. Ordinarily, it is immaterial whether a claim is based upon "accidental injury" or "occupational disease" because "An occupational disease * * * is considered an injury * * *." ORS 656.804. The Court of Appeals, in the present case, held: "A mental condition of the type at issue in this case can be compensated as an occupational disease." In this case, however, it is material whether claimant's claim is determined to be based upon "accidental injury" or "occupational disease."

ORS 656.802(1)(a) defines "occupational disease" as:

"(a)  Any disease or infection which arises out of and in the scope of the employment, *and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein.*" (Emphasis added.)

The distinction between disease and injury is material because the italicized limitation, *"and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein,"* is not a limitation for compensability of an "injury."

■    We have not had occasion to distinguish between "injury" and "disease." The Court of Appeals did so in *O'Neal v. Sisters of Providence,* 22 Or App 9, 537 P2d 580 (1975), and approved the statement made in 1B Larson's Workmen's Compensation Law § 41.31: " '* * * What set[s] occupational diseases apart from accidental injuries [is] both the fact that they can[not] honestly be said to be unexpected, since they [are] recognized as an inherent hazard of continued exposure to conditions of the particular employment, and the fact that they [are] gradual rather than sudden in onset. * * *' (Footnotes omitted.)" 22 Or App at 16.

We conclude that this statement in *O'Neal* is correct.

■    We are of the opinion that claimant's mental illness, neuroses, is an occupational disease. It was not unexpected in the sense that she had a history of developing neuroses in response to criticism which caused her stress. The neuroses developed gradually rather than suddenly. The first supervisor criticism occurred in December 1976 and not until June 1977 was she unable to continue working.

Claimant's condition being an occupational disease, it must be determined whether it was caused by circumstances "to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment." ORS 656.802(1)(a). The referee found that the confrontations with her supervisor were something to which claimant was not ordinarily subjected or exposed other than during her regular employment. A majority of the Board apparently agreed as they adopted

the referee's opinion. Though the Court of Appeals cites ORS 656.802(1)(a), it did not decide whether claimant's conditon met that test.

We applied this section in *Beaudry v. Winchester Plywood Co.,* 255 Or 503, 514, 469 P2d 25 (1970). Beaudry made claim for Workers' Compensation benefits for an aggravation of a pre-existing bursitis in his left hip joint. The employer contended the aggravation was caused by activity to which the worker was ordinarily subjected outside his employment such as walking and going up and down stairs. However, we observed that there was evidence that claimant's condition was caused by the claimant being required at work to stand for eight hours on a vibrating base. This was sufficient to enable the hearing officer to find that claimant's condition resulted from a situation to which he was not ordinarily subjected off the job.

The original occupational disease law defined occupational disease:

"1.  Any disease or infection which is peculiar to the industrial process, trade or occupation in each instance and which arises out of and in the scope of the employment, and to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein." Oregon Laws 1943, ch 442, § 2, p 662.

The definition was amended to eliminate the phrase, "is peculiar to the industrial process, trade or occupation in each instance and which." Oregon Laws 1959, ch 351, § 1. There is no recorded legislative history in connection with either of those acts.

The remaining language retains a standard for determining whether the disease qualifies as an "occupational disease." This statutory criterion for determining when an occupational disease arises out of employment is different from the criteria applied in accidental injury cases. The difference from the criteria applied in accidental injury cases is illustrated by the heart cases decided in this court. In *Olson v. State Ind. Acc. Com.,* 222 Or 407, 352 P2d 1096 (1960), the workman died from a heart attack and his representative contended it was caused by "the mere movement of the arm in manipulating the lever * * *." 222 Or at 417. We held this injury "arose out of" the decedent's

employment. 222 Or at 414, 418. *Accord, Coday v. Willamette Tug & Barge,* 250 Or 39, 440 P2d 224 (1968).

In these cases we spoke of the claimant as performing no more than "the usual exertion" on his job and held an injury incurred from such exertion "arises out of" the employment. As stated, the exertion in *Olson* was "mere movement of the arm" which is not a circumstance or exertion "to which an employe is not ordinary subjected or exposed other than during a period of regular actual employment." If the heart condition in *Olson* had been an occupational disease rather than an injury, it would not have been compensable.

As we observed in *Weller v. Union Carbide,* 288 Or 27, 31, 602 P2d 259 (1979), ORS 656.802(1)(a) literally seems to require that the disease itself must be one "to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment." But we decided to the contrary in *Beaudry v. Winchester Plywood Co., supra* 255 Or 503. In *Beaudry,* we held that the cause of the disease, aggravation or exacerbation of the disease must be one which is ordinarily encountered only on the job.

■ ■ . A physical or mental disability is not an occupational disease even though the conditions causing the disability are not identical in every detail to the conditions to which the claimant is ordinarily exposed off the job. If this off-the-job condition or exposure is a condition substantially the same as that on the job *when viewed as a cause* of the particular kind of disease claimed as an "occupational disease," it precludes the claim under ORS 656.802(1)(a). For instance, it would not matter if certain allergenic elements in materials handled in a factory are chemically distinguishable from similar materials which the susceptible claimant encounters off the job, if the evidence is that this chemical difference is immaterial to the allergenic effect. Perhaps another example might be the effect of two different types and sources of loud noise encountered on and off the job, if the evidence is that the effect of exposure to either is the same. On the other hand, it will not suffice to disqualify a claim that the claimant might have contracted the same disease from exposure to a substantially

different kind of cause off the job. Little can be accomplished by attempting further verbal refinement of the definition. The question ordinarily will depend on the characteristics of the particular disease and the wide or narrow range of conditions that cause it.

■          There was evidence in this case that the claimant's mental illness was caused by criticism by her supervisor. Criticism by a supervisor, of course, is a circumstance to which an employe is subjected or exposed only during employment. However, we would be too narrowly construing the phrase if we looked only to criticism by a supervisor. There was evidence that it was not the source of the criticism but criticism or any unsympathetic or unfriendly conduct from any source that is stressful to claimant. She had stress problems prior to her employment by PACT. Dr. Levine, claimant's psychologist, prior to the hearing, wrote to claimant's attorney: "The tone of voice in which Mrs. James might be cross-examined could be very hurtful to her." Two or three months before she left her work a minor incident involving her child and his school occurred. The school principal was critical either of claimant or her child and she testified "this was very upsetting to me * * *."

In the present case there is a fact question whether claimant's condition was caused by circumstances "to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment."

This court does not try Workers' Compensation cases de novo, but the Court of Appeals does. *Sahnow v. Firemen's Fund Insurance Company,* 260 Or 564, 491 P2d 997 (1971). The cause is remanded to the Court of Appeals to proceed in accordance with this opinion.