In the Matter of the Compensation of
Donald R. Anderson, Claimant.

## ANDERSON,
*Petitioner,*

*v.*

## STATE ACCIDENT INSURANCE FUND CORPORATION,
*Respondent.*

(No. 80-3165, CA A21251)

646 P2d 1352

Allan H. Coons, Eugene, argued the cause for petitioner.
With him on the brief was Coons & Hall, P.C., Eugene.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Claimant appeals an order of the Workers' Compensation Board that reversed the referee's determination that claimant's respiratory condition is a compensable occupational disease. He contends on appeal that he has met his burden of showing that his chronic obstructive pulmonary disease and related respiratory ailments arose from conditions to which he was subjected on the job. ORS 656.802(1)(a). We review *de novo*, ORS 656.298(6), and affirm.

At the time he filed his occupational disease claim in January, 1980, claimant had worked for the Hanna Nickel Smelting Company for 23 years. For the last ten years he had worked as an overhead crane operator in the smelter. The referee's opinion and order summarizes claimant's working conditions:

"* * * Claimant worked in an enclosed cab about four and a half feet by five feet in [dimension], five days a week, spending the better part of six hours in this compartment. The crane is used to move heavy objects in the melting furnace area and moving ore into granulators for nickel processing. The crane cab operates between forty to sixty feet above granulators which give off steam laden with particles that rise up into the plant area and on occasion come in contact with the cab. Claimant, as an operator, was required to open the windows of his cab at least once an hour for approximately fifteen minutes in order to see below to perform his job. While building A is large, open and has some ventilating facilities, * * * ore particles have accumulated on all surfaces inside of the plant * * *, and are present in the air in a free floating state. Also, while there is a ventilation system, inside the cab, there is an accumulation of particles on the ledges which has not been filtered out through the air filtration system. Claimant, when operating the crane, used a half a bottle of Windex during his six hours to keep the windows clean both inside and outside the cab. * * *"

Over time claimant developed chronic coughing with occasional episodes of coughing up blood, as well as other respiratory problems. His coughing was alleviated during a two-month period in 1979 when he was not working, but the problems returned when he began working again.

For all but two of the past 26 years claimant had smoked approximately a pack and a half of cigarettes daily. He gave up smoking for a two-year period, but began again because his coughing did not get better or worse. He finally gave up smoking in June, 1979.

Claimant was examined by a number of physicians. Dr. Owens examined him in July, 1979, and reported: "IMPRESSION: Recurrent rhinosinusitis and tracheobronchitis, secondary to industrial irritants." Dr. Bilder examined him in September, 1979, and reported that, in his opinion, claimant "has chronic obstructive pulmonary disease with chronic bronchitis and bronchial asthma made worse by smog and dusty working involvement." Finally, Dr. Leslie examined claimant in October, 1979. He concluded: "At the present time it is felt that the patient has chronic obstructive pulmonary disease with chronic bronchitis and possibly an asthmatic component which has been exacerbated by pollution and his environmental working conditions."

At the request of SAIF, two of the examining physicians explained their conclusions. Dr. Owens stated, in a letter to SAIF in March, 1980:

> "It is impossible to state whether [claimant's] chronic obstructive pulmonary disease was caused primarily by cigarette smoking or exposure to industrial irritants, or a combination of both. The most likely possibility is the latter. Although most people who develop COPD are heavy smokers, it can and does occur in people who have never smoked at all.

> "I understand your difficulty in a determination of this disability, or responsibility for his physical problems. However, I am afraid that I cannot state with any degree of certainty what was the primary cause of his medical problem. I can only state that at the time I examined him in July of 1979, his exposure to industrial irritants appeared to be the primary aggravating factor in his symptomatology at that time."

Dr. Leslie stated, in a letter to SAIF in April, 1980, that chronic obstructive pulmonary disease is known to be caused by smoking, air pollution and certain working conditions. He then explained:

"* * * I feel that Mr. Anderson has chronic obstructive pulmonary disease which has been worsened by his continued smoking over the past several years as well as by working in the job he has held. I don't think that I can say which one has contributed the most, but I feel strongly that both have contributed to his symptomatology. Especially interesting is that he seems to have more difficulty after working and it may be related to his working environment."

■    ORS 656.802(1)(a) defines an "occupational disease" as:

"Any disease or infection which arises out of and in the scope of employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein."

To be compensable, the disease must be caused by conditions which are ordinarily encountered only on the job. *James v. SAIF,* 290 Or 343, 350, 624 P2d 565 (1981); *Weller v. Union Carbide,* 288 Or 27, 31, 602 P2d 259 (1979); *Beaudry v. Winchester Plywood Co.,* 255 Or 503, 469 P2d 25 (1970). In *James,* the Supreme Court set out a test for making this determination:

"* * * If this off-the-job condition or exposure is a condition substantially the same as that on the job *when viewed as a cause* of the particular kind of disease claimed as an 'occupational disease,' it precludes the claim under ORS 656.802(1)(a). * * *" (Emphasis in original.) 290 Or at 350.

In *SAIF v. Gygi,* 55 Or App 570, 639 P2d 655, *rev den* 292 Or 825 (1982), the issue was whether the claimant's psychiatric disability, which was caused by stress, arose. from on-the-job circumstances. In reviewing the record, we found that claimant was highly susceptible to the effects of stress both on-the-job and in off-the-job situations. We concluded:

"* * * Nonetheless, when viewed as a cause of his disability, the stress he faced while on the job was of greater intensity and was not substantially the same as the stress faced off the job. *James v. SAIF, supra,* 290 Or at 350. In short, the work-related stress was the major contributing cause of claimant's disability." 55 Or App at 577.

We accordingly held the claimant's disability to be a compensable occupational disease.

■ In the present case, claimant concurrently was a heavy smoker *and* was exposed to nickel ore particles and smelter-generated particulate matter for a long period of time. In order for his chronic obstructive pulmonary disease to be compensable, claimant has the burden of showing that the on-the-job exposure was the major contributing cause of the disease. Reviewing the record, we are unable to conclude that claimant's on-the-job circumstances were the major contributing cause of his respiratory disease. The medical evidence is inconclusive; the examining physicians were unable to determine whether on-the-job or off-the-job circumstances were the greater contributor to claimant's pulmonary disease.

■ Claimant need not establish medical certainty in order to prove his case, *Hutcheson v. Weyerhaeuser*, 288 Or 51, 602 P2d 268 (1979), but he must establish more than a mere possibility that the on-the-job circumstances were the major contributing cause of the disability. *See Thompson v. SAIF*, 51 Or App 395, 625 P2d 1348 (1981). We agree with the Workers' Compensation Board that there is "no persuasive basis in the record for concluding one cause more likely than the other." We therefore affirm the Board's order.

Affirmed.