In the Matter of the Compensation of
Thomas Mitchell, Claimant.

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Petitioner,*

*v.*

MITCHELL,
*Respondent.*

(78-02298; CA A25857)

664 P2d 1134

Donna M. Parton, Associate Appellate Counsel, State Accident Insurance Fund Corporation, argued the cause for petitioner. With her on the brief was Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem.

Jerome F. Bischoff, and Bischoff & Strooband, P.C., Eugene, filed the brief for respondent.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

VAN HOOMISSEN, J.

Newman, J., dissenting.

## VAN HOOMISSEN, J.

SAIF appeals an order of the Workers' Compensation Board that affirmed the referee's order that claimant was entitled to benefits for disability caused by mental illness arising out of his employment.[1]

The referee found the following facts:

"Claimant, 48 years of age, spent approximately 13 years in State and Federal prisons. He was released in 1964 and worked in food service for approximately six years before coming to Oregon in August 1971. In Oregon he worked as a car salesman and performed voluntary work motivating and securing jobs for released convicts. In April 1976 he began work fulltime as a human resource's assistant. This job entailed conducting weekly classes at correctional institutions relating his experiences and motivating persons to emulate his good example. In this position he had no specific problems. He had several confrontations with his supervisors about being too candid and was advised to bury his past, however, he found no discrimination which hindered him.

"During past years he had suffered near blackouts at times of stress. He had been treated for anxiety symptoms in 1953 while he was confined at a Federal prison at which time he went into complete withdrawal and was hospitalized. Subsequently, at the Oregon State Prison he suffered anxiety symptoms and was put on medication for several weeks, however, for many years he was not treated medically for anxiety symptoms.

---

[1] ORS 656.802(1)(a) provides:

"* * * '[O]ccupational disease' means:

"Any disease or infection which arises out of and in the scope of the employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein."

SAIF denied the claim in 1978. A referee found that the claim was compensable and remanded it to SAIF for acceptance and payment of benefits. The Board reversed. We then reversed the Board in a *per curiam* opinion, citing *James v. SAIF,* 44 Or App 405, 605 P2d 1368 (1980). *Mitchell v. SAIF,* 44 Or App 656, 606 P2d 697, *rev allowed* 289 Or 209 (1980). On review, the Supreme Court remanded to us for further proceedings consistent with *James v. SAIF,* 290 Or 343, 624 P2d 565 (1981). 290 Or 361, 624 P2d 571 (1981). We then remanded to the Board for further proceedings pursuant to *James.* 51 Or App 206, 625 P2d 667 (1981). The Board remanded to the Hearings Division to allow the presentation of additional evidence and for entry of a new order. With the parties' consent, the referee reviewed the claim on the record made at the initial hearing, and he again found that it was compensable. Accordingly, he affirmed his earlier opinion and order remanding it to SAIF. The Board affirmed.

"In July 1977 he left the human resources assistant's job in Salem, Oregon to take a probation officer's job in Portland, Oregon. His duties on this job were to monitor released prisoners on probation. He was advised by his supervisors to maintain a low profile regarding his background. He never discussed his prison background with people under his charge, however, the people with whom he worked knew his background and oftentimes made reference to convicts as 'flakes' or 'turkeys' which bothered him and his co-workers and supervisor had made reference to his background.

"On December 12, 1977 claimant had a violent argument with his co-worker and supervisor which caused him to become very upset. He left work an hour early in the afternoon, blacked out on the freeway driving from Portland to Salem, Oregon and was treated at the emergency room of a hospital. At the time he was taking valium regularly, two or three times daily since 1968, for back pain. He had been treated for several years and was seen in November 1977 for blackout symptoms believed to be on an emotional basis. In psychiatric examination, he indicated a number of conflicts in relationship to his family, marriage and employment situations.

"On January 31, 1978 claimant had another nervous attack when he was driving from Portland to Salem, Oregon. He had not been in the Portland office that day but had been in the field working.

"On February 1, 1978 claimant discussed the incident in the vicinity of Woodburn while working with a co-worker and supervisor and indicated that it was necessary for him to have someone drive him back to his work station in Portland, indicating that each time he came within the vicinity of Woodburn he had some sort of seizure; that his malady was in no way connected with any pressure or difficulties on-the-job or from conflicts in his position but being away from his wife and family and not being permanently established in Portland caused pressures.

"Tests in 1978 showed claimant to be an early mild diabetic; that he has problems sometimes found in early mild diabetics in association with emotional stress, tension and anxiety and explain the rather peculiar and unexplainable series of incapacitating episodes that he experienced. On March 7, 1978 claimant was hospitalized for further evaluation. The impression was that there may be some element of reactive hypoglycemia that was being magnified by an internal tension state that needed further clarification. Neurologic evaluations were normal and psychiatric evaluations were considered

essentially normal except for some underlying anxiety detected. The diagnosis was episodic lightheadedness, rule out hypoglycemia, low-back pain by history, history of excessive alcohol and history of valium excess.

"Dr. Winfred Needham who had treated claimant since 1973 for a variety of problems concluded that claimant was disabled because of blackouts believed to be on an emotional basis; that excessive use of valium for the past years was a factor in the continuing physical and psychosomatic complaints, that claimant could not return to the stressful situation at work.

"Dr. Erik S. Orwoll at the University of Oregon Health Science Center concluded that the origin of claimant's condition most likely lay in the tremendous anxiety produced by job-related problems; that the complaints of frequent lightheadedness spells were more likely the consequence of psychiatric disease rather than an endocrine disorder, a psychological situation brought on by factors in relation to his job and stress under which he worked. The stress had nothing to do with the job itself, but with other personnel and other factors, rather than pure job stress from the type of work he was doing and these symptoms progressed until claimant soon became totally unable to carry out his work or any form of work or duties because of the stress and anxiety."

SAIF contends that claimant's disability is causally related to a number of off-the-job sources of stress, including the inability of his wife to find suitable employment in Portland, his commuting by car from Salem to Portland, telephone calls by ex-convicts to his home that distressed his wife, financial problems and perceptions of discrimination in his attempt to find other employment. SAIF notes that he had a history of adverse reaction to stress long before beginning his present employment. It argues that he has failed to show that his mental condition is caused by employment conditions that are not substantially similar to those encountered off the job or that the conditions of his employment were the major contributing cause of his present condition.

■ *James v. SAIF,* 290 Or 343, 348, 624 P2d 565 (1981), held that a claimant seeking compensation for an occupational disease must show, not only that the condition arose within the scope of employment, but that the condition "was caused by circumstances 'to which an employe is not ordinarily subjected or exposed other than during a period of regular actual

employment.' ORS 656.802(1)(a)." "[T]he cause of the disease, aggravation or exacerbation of the disease must be one which is ordinarily encountered only on the job." *James v. SAIF, supra,* 290 Or at 350; *see also Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979); *Beaudry v. Winchester Plywood Co.,* 255 Or 503, 469 P2d 25 (1970); *SAIF v. Gygi,* 55 Or App 570, 639 P2d 655, *rev den* 292 Or 825 (1982). Employment conditions need not be the sole cause of the disability. If employment conditions, when compared to non-employment exposures, are the major contributing cause of the disability, or aggravation or exacerbation of the disability, then compensation is warranted. *Beaudry v. Winchester Plywood Co., supra; SAIF v. Gygi, supra.*

In determining whether claimant has met his burden of proof, it is proper to consider whether there are alternative, non-work explanations. *See Balfour v. SAIF,* 59 Or App 503, 651 P2d 179 (1982), *rev den* 294 Or 460 (1983). Claimant testified that he suffered "stress" at work. He contends that conflicts with fellow employes precipitated his disability. There is abundant evidence, however, of non-work stress that is causally related to his disability. He himself testified to the non-work stresses set out above.

Tests showed that claimant was an early mild diabetic. Dr. Needham stated that the symptoms he exhibited in reaction to stress were not uncommon in early mild diabetics. Dr. Hogue noted stress involving his family, his marriage and his employment situation that would create sufficient anxiety to be expressed somatically. Additionally, claimant had a history of adverse reactions to stress long before his present employment. In 1953, he was hospitalized for anxiety symptoms when his mother died. In 1956, he was treated for a mental condition.

The strongest medical evidence linking claimant's work to his disability is the opinion of Dr. Orwoll, who felt that claimant's lightheaded spells were probably not caused by hypoglycemia:

> "As we discussed with Mr. Mitchell, and which he understands and in fact agrees with, are that the origin of his spells most likely lies in the tremendous anxiety produced by job related problems."

That conclusion, however, was based on an incomplete and inaccurate history. Dr. Orwoll believed that the "spells" began early in 1978; however, claimant had been treating with Dr. Needham for seven years before this claim. He reported in April, 1978, that claimant's chief complaint for two to three years earlier was near-blackouts occurring at times of stress. Dr. Carney also stated that he had a two-year history of symptoms.

Claimant began his present employment in July, 1977. In December, 1977, he blacked out after leaving work early following an argument with fellow employees. He experienced identical symptoms, however, in January, 1978, after a normal day in the field. On that occasion, there was no immediate work stress that would have precipitated that particular episode, and, in a discussion with a fellow employe and a supervisor, he stated that his condition was caused by stress at home. Claimant last worked on January 31, 1978, yet he continued to experience the same symptoms after leaving work. On March 20, 1978, he called his supervisor and stated that he had suffered a fainting spell at home and was unconscious for a period of time.

■ Although claimant may have had adverse symptoms in response to work stress, he experienced numerous non-work stresses to which he had identical reactions. His reaction to stress began many years before beginning his present employment, and his symptoms continued after he left that employment.

On *de novo* review, we conclude that claimant has failed to prove by a preponderance of the evidence that his disability is compensable. ORS 656.802(1)(a); *James v. SAIF, supra.* The record does not persuade us that claimant's work was the major contributing cause of his disability. *SAIF v. Gygi, supra.*

Reversed.

**NEWMAN, J.,** dissenting.

Both the referee and the Board correctly found that the medical evidence was sufficient to establish that claimant's condition was compensable as an occupational disease caused by conditions on the job that were not substantially similar to conditions off the job and that claimant's on-the-job

stress was the major contributing cause of his mental condition. Accordingly, I dissent.

Dr. Needham, claimant's treating physician, reported on June 5, 1978:

"In December I became virtually convinced that we were dealing with a psychological situation brought on by the factors mentioned above in relation to his job and stress under which he worked. This stress had nothing to do wih his job itself, but with his superiors and other factors belonging in that category rather than pure job stress from the type of work he was doing. The symptoms progressed until he soon became totally unable to carry out his work or any form of work or any of his duties because of this stress and anxiety.

"I am sure you have a copy of Dr. James Hogue's psychiatric evaluation of December 1977, which pretty much verifies what has just been said, only, as said before, it has been alluded to in a rather indirect fashion, and no one, to my knowledge, has really come out and indicated that the real reason for his problems is literally the fact that he is an 'ex-convict' and the attitude of his superiors in this connection."

Dr. Orwoll, of the University of Oregon Health Sciences Center, concurred that claimant's condition most likely resulted from anxiety produced by job-related problems. He concluded that the complaints of frequent spells of light-headedness were more likely the consequence of psychiatric disease than of an endocrine disorder brought on by factors in relation to his job and stress under which he worked. Dr. Orwoll stated:

"As we discussed with Mr. Mitchell, and which he understands and in fact agrees with, are that the origin of his spells most likely lies in the tremendous anxiety produced by job-related problems."

Dr. Carney at the University of Oregon Health Sciences Center also supported the opinion of Dr. Needham.

In a complicated medical situation such as here, reliance must be placed on medical experts to establish the causal relationship between the injury and the alleged disability. *Uris v. Compensation Dept.,* 247 Or 420, 427 P2d 753 (1967).

The majority dismisses too readily Dr. Orwoll's opinion as "based on an incomplete and inaccurate history," because Dr. Orwoll believed claimant's blackout spells began

early in 1978. Claimant was emphatic in his testimony that the blackouts did not begin before November, 1977. Dr. Needham's April, 1978, report states that claimant had experienced blackouts for two to three years. However, it would appear that this may be a transcription error, because Dr. Needham's handwritten report dated a month earlier states that the blackouts began in "the past few months," and his report of June 5, 1978, states that claimant's visits before November, 1977, were "all pretty much routine" and that his "real symptoms" of anxiety "came into the picture in October and November of 1977."

Dr. Carney reported that claimant's "problems" began two years before, but does not refer to any blackout occurring until approximately the beginning of 1978.

The referee correctly gave no weight to the assertion that claimant used Valium or alcohol to excess. Dr. Needham wrote on June 5, 1978:

"To the best of my knowledge, Tom has had no alcoholic intake for well over 10 or more years. I feel very sure in my own mind that this is correct. Therefore, I would question a bit concerning the discharge diagnoses made by Dr. D. M. Carney on his discharge summary of March 1978, because the 'history' of excess alcohol should be extended to indicate that such intake has been 10 to 12 years ago, and therefore is not a factor in the present problem. Also, the history of Valium excess also gives an implication of an inaccurate situation. As I have indicated above, we have been trying to reduce Tom's Valium intake somewhat, but it is certainly not excessive, and it appears to be the only thing that really controls these episodes that Tom experiences. Thirty mg. of Valium per day is probably not an excessive amount for him. As has been indicated at various times, it has been felt that, if possible, some reduction in the Valium intake was desirable, but experience has shown that anything under 30 mg. per day does not control his symptoms. Some months back his daily dosage was 40 mg. per day. Dr. Carney, upon hospital discharge, tried to discontinue the Valium and substitute Vistaril, which Tom found to be of no value whatsoever.

"The question of whether or not this is an industrial or occupational disease is obviously the main concern, and I feel that this is, in fact, an occupational disease related to the things that I have pointed above and which Tom will, at some future date I am sure, elaborate on more thoroughly. As to the

date of onset, this is most difficult to determine precisely. Obviously, it was a gradual onset, but the real symptoms came into the picture in October and November of 1977, so a specific date is absolutely impossible to give."

The evidence supports the conclusion that before working for the probation office in Portland commencing in mid-1977, claimant had not manifested any symptoms of anxiety since 1956, over 21 years. Dr. Needham noted that claimant's mental condition had a gradual onset with a rapid deterioration in October and November, 1977. I believe that claimant carried his burden of proving by a preponderance of the evidence that on-the-job stress was the major contributing cause of his mental condition.