Argued and submitted May 9, affirmed October 12, 1983, reconsideration allowed, former opinion supplemented to hold former OAR 436-54-225 valid and adhered to as supplemented February 22 (67 Or App 79, 676 P2d 934), petition for review denied April 17, 1984 (296 Or 829)

In the Matter of the Compensation of
Karen L. Fink, Claimant.

## FINK,
*Petitioner,*

*v.*

## METROPOLITAN PUBLIC DEFENDER,
*Respondent.*

(80-10425; CA A26671)

670 P2d 194

Elden M. Rosenthal, Portland, argued the cause for petitioner. With him on the brief was Rosenthal & Green, P.C., Portland.

David O. Horne, Beaverton, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Claimant appeals from an order of the Worker's Compensation Board which affirmed the hearing referee's decision that former OAR 436-54-225 establishes a proper formula for computing temporary partial disability and that claimant's condition is not a compensable occupational disease. We review *de novo,* ORS 656.298(6), and affirm.

Claimant, age 35 at the time of the hearing, is an attorney. She graduated from law school and was admitted to the Oregon Bar in 1977. She was self-employed until May, 1978, when she became employed with the Metropolitan Public Defender's Office (MPD) in Portland. At MPD she initially handled a case load of 70 to 80 misdemeanor clients. In January, 1979, she was transferred to the felony division, and her workload and responsibilities increased substantially. According to claimant, her weekday work hours typically were from 8:00 a.m. to 11:00 p.m., and she regularly worked weekends as well.

Early in 1979, claimant began to experience fatigue and complained of pain in her shoulders, arms and hips. In August, 1979, she voluntarily left MPD. She testified that she left because her health was deteriorating, she was exhausted and she could not handle the stress level of that office. In mid-October, she began working for a law firm in private practice on a half-time basis and remained so employed at the time of the hearing.

Claimant did not seek medical attention until March 27, 1980, when she was examined by Dr. Rosenbaum. Claimant reported continuing symptoms of fatigue and joint pain. Dr. Rosenbaum conducted a physical examination and laboratory tests. He made an essentially negative diagnosis but suggested the possibility of rheumatoid arthritis. On August 20, 1980, claimant was examined by Dr. Robert Bennett, who diagnosed fibrositis.

Claimant filed a claim with MPD for compensation for fibrositis on September 19, 1980. The claim was denied on May 4, 1981. She requested a hearing. The referee held that she was entitled to temporary total disability benefits from August 3, 1979, when she left her job because of her fibrositis, until October 1, 1979, when she started working half-time in

private practice. He awarded her temporary partial disability benefits for October, November and December, 1979, but found that she was not entitled to any temporary partial disability benefits after January 1, 1980. The referee also concluded that claimant had failed to establish that she had a compensable occupational disease.[1] She appealed to the Board, which affirmed the referee's order. This appeal followed.

Claimant appeals the Board's ruling that her occupational disease claim was not compensable. She argues that she satisfied her burden to prove that her job stresses exacerbated her symptoms and caused a worsening of her fibrositis. On *de novo* review, we find the evidence insufficient to establish compensability of this claim.[2]

■  In order to prevail on an occupational disease claim, a claimant must prove each of the elements articulated in *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979). *Weller* requires that a claimant prove by a preponderance of evidence that "(1) his work activity and conditions (2) caused a worsening of his underlying disease (3) resulting in an increase in his pain (4) to the extent that it produces disability or requires medical services." 288 Or at 35. Claimant has failed to meet that burden of proof.

■  The doctors who examined her essentially agree that the symptoms she reported can be consistent with a diagnosis of fibrositis and that a person who has symptoms of fibrositis and works in a stressful job situation could become more symptomatic. Dr. Bennett, who initially diagnosed fibrositis, testified that the stress of claimant's MPD job probably

---

[1] MPD has not contested the award of temporary total disability or temporary partial disability benefits. A claimant is not obligated to repay compensation paid pending review by the board or appeal to this court, even if the board or court determines that compensation should not have been allowed. ORS 656.313(2).

[2] The referee denied claimant's occupational disease claim on the basis of *James v. SAIF,* 290 Or 343, 624 P2d 565 (1981), because her fibrositis was not caused solely by circumstances of the work environment. The Board subsequently assessed the claim under the standard established in *SAIF v. Gygi,* 55 Or App 570, 639 P2d 655, *rev den* 292 Or 825 (1982), which this court decided between the hearing and the Board's review. The Board found that claimant failed to meet the *Gygi* standard, *i.e.,* she failed to prove that her work was the major contributing cause of her disability. Because we find that claimant failed to show a worsening of the underlying pathology of her disease, we do not decide whether the evidence is sufficient to prove that her job conditions were a major contributing cause of her disability.

exacerbated her symptoms and that that exacerbation probably left her with the residual level of symptoms she was experiencing at the time she filed her claim. However, the record is devoid of any evidence to indicate a worsening of claimant's underlying disease, as distinguished from symptoms alone.

Claimant's examining doctors, both specialists in rheumatology, indicated that the underlying pathology of fibrositis has not been determined. From this record, we cannot say that fibrositis exists, nor does the evidence in the record establish that the symptoms of fibrositis *are* the disease. Therefore, from this record, it would be purely speculative to infer that claimant's employment caused a worsening of her underlying disease.[3] We conclude that she has failed to establish a compensable occupational disease.

Claimant also contends that she is entitled to temporary partial benefits after January 1, 1980. Because we conclude that she has failed to establish a compensable occupational disease, we do not address that contention.

Affirmed.

---

[3] We note that the referee concluded that the evidence that claimant's symptoms remained at a higher level at the time of the hearing than before she became symptomatic on the job more than two years earlier tends to support the conclusion that her work activities and conditions contributed to a worsening of her underlying disease. We are not bound by that conclusion, and we do not find that analysis persuasive.