Argued and submitted November 14, 1979, reversed February 11, 1980

## MOE,
### *Respondent Cross-Petitioner,*
#### *v.*
## CEILING SYSTEMS, INC.,
### *Petitioner,*
#### *v.*
## JOHNSON ACOUSTICAL & SUPPLY CO.,
### *Respondent.*

(No. 77-7356, CA 13452)

606 P2d 644

Elizabeth K. Reeve, Portland, argued the cause for petitioner. With her on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe, and James D. Huegli, Portland.

Edward C. Olson, Portland, argued the cause and filed the brief for respondent-cross-petitioner.

William C. Campbell, Portland, argued the cause for respondent Johnson Acoustical & Supply Co. On the brief were Lindsay, Nahstoll, Hart, Neil & Weigler and James N. Gardner, Portland.

Before Schwab, Chief Judge, and Lee and Richardson, Judges.

RICHARDSON, J.

SCHWAB, C. J., dissenting opinion.

## RICHARDSON, J.

This workers' compensation case involves the issues of whether claimant has proven a compensable occupational disease and, if so, which of two employers is responsible for payment of benefits. The referee held that claimant had not established that his condition arose out of and in the course of his employment. The Workers' Compensation Board reversed the order of the referee and ordered Ceiling Systems, Inc., claimant's last employer, to accept the claim. Ceiling Systems appeals, contending claimant's condition is not compensable and in the alternative, if it is compensable, Johnson Acoustical and Supply Company is the responsible employer. Claimant argues that his condition is compensable and contends either employer is responsible. He also cross-appeals the portion of the Board's order reducing the award of attorney fees made by the referee. Johnson Acoustical and Supply Company contends that claimant's disease did not arise out of his employment and argues that if the court, however, finds the disease is compensable, Ceiling Systems is the responsible employer.

Claimant, who was 47 years old at the time of the hearing, had worked as a carpenter for six separate employers since coming to Oregon in 1959. He worked for Johnson Acoustical from 1971 through April, 1977, for Pacific Partitions two weeks in 1977, and then for Ceiling Systems for six weeks in 1977.

While working for Johnson Acoustical he spent a portion of his time installing sheetrock ceilings. That type of ceiling is installed by two workers who stand on a scaffold and lift a sheetrock panel and suspend it on their heads until it is attached to the ceiling frame by nails or screws. The sheetrock panels weigh approximately 145 pounds. Approximately one-third of claimant's time while employed by Johnson Acoustical was spent installing sheetrock ceilings. Claimant also installed sheetrock while "moonlighting."

Claimant was involved in a nonwork related automobile accident in 1971. He sustained a neck injury that required medical treatment. His personal injury claim was settled.

He left Johnson Acoustical in April, 1977, and after two weeks work at Pacific Partitions he went to work for Ceiling Systems. His job at Ceiling Systems involved installation of acoustical tile ceilings. Acoustical tile ceilings are installed by attaching wires to the existing ceiling from which the tile framework is suspended in a grid pattern. Installation of the wires requires overhead work. Once the frame gridwork is installed the installer, standing on a scaffold, works at eye level to place the tiles in the grid frames. The individual tiles weigh approximately seven pounds.

Approximately two months before leaving Johnson Acoustical, claimant began experiencing pain in his right arm. The pain persisted during the time he worked for Ceiling Systems. Toward the end of the latter employment the pain became more severe and radiated up into his neck and ultimately involved pain in his neck and both arms.

Claimant consulted Dr. Glaubke, who diagnosed his condition as a cervical disc syndrome. He was ultimately referred to Dr. Tanabe, an orthopedic surgeon, who concluded his neck pain was caused by either osteophytes, which produced a narrowing of the space in the spinal column through which the spinal cord passed, or osteoarthritis. The condition was described as a form of degenerative arthritis. Dr. Tanabe surgically fused certain of claimant's vertebra, which relieved the pain in his arms.

The dispositive issue is whether claimant has sustained his burden to prove that his condition was caused or worsened by the condition of his employment. To sustain his burden of proof, claimant offered his own statement and a report of Dr. Tanabe to establish the causal link between the disease and his

employment. Claimant wrote on an initial injury report: "I feel my problem has been caused from years of overhead work, doing ceiling work and working with heavy sheetrock." In a letter received in evidence, Dr. Tanabe stated his bare conclusion that claimant's "employment as a sheetrocker and ceiling installer was a contributing factor" to his medical problems and the necessity for surgery. In a follow-up letter, Dr. Tanabe reiterated the same conclusion in essentially the same terms and stated that the conclusion was well documented by Dr. Glaubke's notes. The only report in the record from Dr. Glaubke is a Physician's Initial Report of Work Injury of August 25, 1977. That report was partially filled out by claimant, who wrote in the statement quoted above in this paragraph. Dr. Glaubke diagnosed claimant's condition as cervical disc syndrome. In response to a question on the form as to whether the condition diagnosed was the result of the industrial exposure described by claimant, Dr. Glaubke answered "undetermined."

We conclude that claimant has not sustained his burden of establishing a causal nexus between his employment and his disease. Claimant's own conclusion as to the cause can be given little weight. It is merely a layman's analysis as to the cause of a medical condition. This is not an injury the cause of which can be determined by a nonexpert. Dr. Tanabe's bare conclusion, as to the contributing cause of the disease, likewise cannot be given much weight. There is no explanation in the medical reports as to possible causes of osteophytes or osteoarthritis and whether they could be caused by external forces such as trauma or overhead work. There is no factual basis to judge the validity of Dr. Tanabe's conclusion that claimant's employment as a ceiling installer or sheetrocker contributed to the disease. Dr. Tanabe's references to Dr. Glaubke's notes does not supply the missing medical analysis. Dr. Glaubke's notes in the record contain no analysis of the cause of claimant's condition. The report recites only claimant's conclusion as to the cause.

In his cross-appeal, claimant contends the Workers' Compensation Board erred in reducing the referee's award of attorney fees. The referee, in response to claimant's petition, awarded claimant $500 attorney fees and penalties to be paid by Johnson Acoustical for unreasonable failure to pay temporary benefits within 14 days of the notice of the claim. ORS 656.382. Johnson Acoustical did not appeal the award of penalties or attorney fees to the Board or otherwise contest the award or the amount.

Claimant argues that there is a specific statutory procedure for contesting the amount of attorney fees awarded by the referee, ORS 656.388, and the Board lacks jurisdiction to alter the award. ORS 656.388(2) provides:

> "If an attorney and the referee or board cannot agree upon the amount of the [attorney] fee, each forthwith shall submit a written statement of the services rendered to the presiding judge of the circuit court in the county in which the claimant resides. The judge shall, in a summary manner, without the payment of filing, trial or court fee, determine the amount of such fee. * * *"

This statutory procedure may well have unintentionally survived amendment of the Workers' Compensation Act in 1977, Or Laws 1977, Ch 804, which removed the circuit court from the appellate process. The procedure, however, does exist as part of the statute. We may construe statutes and determine the legislative intent but are not empowered to correct legislative mistakes by ignoring a statutory procedure the legislature may have inadvertently let stand after a statutory revision. This procedure for determination of the amount of attorney fees is limited to situations where the attorney, the referee or Board cannot agree on an amount. In the case here at issue, Johnson Acoustical did not contest the amount of attorney fees before the referee or the Board and makes no mention of the issue in its brief filed in this Court. We conclude

[434]

the Board should not have reduced the award of attorney fees.

Reversed.

SCHWAB, C. J., dissenting in part.

I believe that Oregon Laws 1977, ch 804, which removed the circuit court from the appellate process in workers' compensation cases, repealed by implication ORS 656.388(2). I would therefore affirm the order of the Board with regard to the award of attorney fees.