Argued and submitted December 19, 1980, affirmed March 30, 1981

In the Matter of the Compensation of
Edith M. Thompson, Claimant.

# THOMPSON,
*Petitioner,*

*v.*

# STATE ACCIDENT INSURANCE FUND CORPORATION et al,
*Respondents.*

(Nos. 78-7735 & 78-10,039, CA 18665)

625 P2d 1348

Elliott Lynn, Portland, argued the cause for petitioner. With him on the brief was Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause

for respondent State Accident Insurance Fund Corporation. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund Corporation, Salem.

Brian L. Pocock, Eugene, argued the cause for respondent Industrial Indemnity. With him on the brief was Cowling, Heysell & Pocock, Eugene.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

RICHARDSON, P.J.

## RICHARDSON, P.J.

In this workers' compensation case, claimant appeals an order of the Workers' Compensation Board (Board) which affirmed the hearing referee's denial of claimant's occupational disease claim. ORS 656.802(1)(a). Claimant contends the Board erred in determining that claimant failed to establish that her allergic condition was compensable. We affirm.[1]

Claimant began work in employer's department store in 1967. The first five years of her employment were medically uneventful. Beginning in the sixth year, however, she began to experience a progressive onset of symptoms, including headaches, dizzy spells, nausea, nose bleeds and skin rashes. She testified that the symptoms began some time after her transfer to the gift department, where numerous plants, ceramics, pine and cedar boxes, plastics and other substances were located. She testified that she experienced significant problems from cedar boxes and nutshell-stuffed animals located in the department.

Prior to the onset of the symptoms, claimant had been treated for some years for seasonal hay fever, which generally lasted one or two months a year. In January, 1977, she consulted Dr. Lee. In a history given to Dr. Lee, claimant indicated that her symptoms were precipitated by many common substances, including tobacco smoke, hair spray, perfumes, paint and strong odors. During this period of time, claimant was also treated by Dr. Kean. In a history given Dr. Kean, claimant again indicated that she was bothered by such things as perfume, deodorant, hair spray, smoke, dust, animal danders and certain foods. Dr. Kean initiated a treatment program, but claimant did not find significant relief from her symptoms.

In early 1978, claimant's symptoms and condition progressively worsened to the point that during the work week she experienced significant distress. Her symptoms tended to decrease while she was away from work but

---

[1] Claimant also raises an issue concerning the responsibility of the successive insurance carriers involved in this case for any payment of benefits should we find the claim compensable. Since we affirm the Board's denial of the claim, it is unnecessary for us to consider which insurer would ultimately be liable for payments of benefits.

would return and progressively worsen during the work week. In April, 1978, claimant consulted Dr. Morgan, an allergist and immunologist, about her problems. In a questionnaire provided by Dr. Morgan, claimant indicated that she was primarily bothered by cigarette smoke, perfume and dust. In addition, she related to Dr. Morgan the problems she experienced at work. Dr. Morgan conducted sublingual ethanol and phenol testing. Based on these tests, and the history provided by claimant, Dr. Morgan concluded that claimant had hay fever, perennial nasal allergy, susceptibility to chemical exposures and certain food allergies. He opined that claimant had a severe degree of susceptibility to numerous hydrocarbon-based substances found at work and that her degree of illness was precipitated and continuously aggravated by her work environment. At the hearing, Dr. Morgan testifed that claimant's work environment was a material contributing factor in bringing about her symptoms and condition.

Claimant terminated her employment in April, 1978. As a result, both Drs. Kean and Morgan observed an improvement in her condition. She continued to experience some problems, however, both in and outside her home. In particular, she was bothered in many local business establishments and in motel rooms in which she stayed during family vacations. Dr. Morgan opined that these continued reactions occurred because once claimant had developed a high sensitivity to substances found at work, other related or similar compounds found elsewhere also caused problems.

In August, 1978, claimant was examined by Dr. Minor, a Board certified immunologist and allergist. Dr. Minor performed scratch tests with miscellaneous inhalants, weeds, trees, grasses and molds. He observed positive reactions to both grass and pollen. After consideration of these results and Dr. Morgan's clinical chart notes, Dr. Minor concluded that claimant had grass/pollen sensitivity. Additionally, he determined that claimant's condition and symptoms were largely psychosomatic in nature. In this respect, he found it interesting that though claimant seemingly improved after leaving work, she was still exposed to many chemicals and substances which were present in the store. Dr. Minor specifically rejected the conclusion that

claimant's symptoms were related to her work activities. In doing so, he specifically questioned Dr. Morgan's findings and the test procedures that formed the basis of those findings. In particular, he noted:

"* * * In my impression hydrocarbon and chemical sensitivity as described by Dr. Morgan has not been adequately proven in the literature nor do I feel that sublingual provocative testing is a reliable technique. The Oregon Allergy Society two years ago came out with a statement saying that sublingual provocative food testing was not reliable. It is interesting to note that the patient, in spite of being away from the store, still has a considerable amount of trouble. Obviously, if one believes that you can be allergic to hydrocarbons then hydrocarbons are present everywhere and it is certainly difficult to stay away from them. Therefore, it is very hard to prove or disprove this sensitivity. The sublingual testing seem to have a very large psychological component to it. Double blind studies have proven it not to be a very reliable technique."

Finally, in January, 1979, claimant was examined at Dr. Morgan's request by Dr. Kailin, a Board certified allergist and immunologist in the state of Washington. Dr. Kailin obtained a history from claimant, examined Dr. Morgan's clinical findings and determined that claimant had a lifelong inherited allergy to dusts, molds and pollens. In addition, Dr. Kailin agreed with Dr. Morgan that she had developed numerous chemical intolerances as a result of long term concentrated exposures in the course of her employment. Dr. Kailin, while conceding that claimant was exposed to similar offenders in her normal living situation, concluded that her disability should be considered job related.

ORS 656.802(1)(a) sets forth the elements that a claimant must prove to establish a compensable occupational disease claim:

"(1)   As used in ORS 656.802 to 656.824, 'occupational disease' means:

"(a)   Any disease or infection which arises out of and in the scope of the employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein."

The Board, in adopting the referee's order, concluded that claimant had failed to carry her burden of proof. Resolution

of that issue by the referee was based largely on the opinions of the medical experts.

As noted by the referee, the medical experts disagreed on the issue of whether claimant's employment was a contributing cause of her allergy condition. Dr. Morgan and Dr. Kailin concluded there was the necessary causal relationship. Dr. Minor concluded otherwise. Dr. Kailin's opinion rests solely on the medical chart notes of Dr. Morgan and the history obtained from claimant. She conducted no additional tests. For a number of reasons, we believe Dr. Morgan's diagnosis is subject to question. First, though Dr. Morgan devoted a large portion of his practice to allergy problems, he had done no formal allergy residency and is not a Board certified specialist in the area. Second, we find it significant that claimant indicated to all her treating and examining doctors that her primary problems were caused by many common substances found everywhere in daily life. Dr. Morgan, however, concluded that claimant's condition was not caused by those substances but, rather, from exposure to hydrocarbon chemicals found at work. Dr. Minor specifically challenged this diagnosis. He tested claimant on many of the substances that she had consistently related gave her trouble and observed positive reactions to grasses and pollens. Third, Dr. Minor stated that allergies to the compounds believed by Dr. Morgan to cause claimant's problems had not been proven in the medical literature and questioned the testing procedures Dr. Morgan relied upon to reach his conclusions. In this latter respect, we note that the record does not reflect the use of sublingual testing by other treating and examining doctors involved in this case. In fact, based on all other tests performed on claimant reflected in the record, she was considered allergic to grasses, pollens and certain foods.

It is clear from the medical evidence that claimant's condition was caused by a number of substances, including those containing hydrocarbons. It is also clear that her exposure was not limited to substances in the work environment. In *James v. SAIF,* 290 Or 343, 624 P2d 565 (1981), the Supreme Court said a condition is compensable as an occupational disease only if it was caused by circumstances to which an employee is not ordinarily subjected or

exposed other than during a period of regular employment. Claimant's off-the-job exposure was substantially similar to that on the job. There was a greater concentration of the offending substances on the job and a more intense exposure; however, the concentration and intensity of exposure was not established as the cause of claimant's condition.

We conclude claimant has not established that she had an occupational disease.

Affirmed.