Argued and submitted June 8, 1982, affirmed and remanded July 19, 1983

In the Matter of the Compensation of
Walter J. Dethlefs, Claimant.

DETHLEFS,
*Respondent on Review,*

*v.*

HYSTER COMPANY,
*Petitioner on Review.*

(WCB 79-4604, CA A 21593, SC 28490)

667 P2d 487

David O. Horne, Beaverton, argued the cause and filed the briefs for petitioner on review.

Richard A. Sly and Bloom, Marandas & Sly, Portland, argued the cause and filed the briefs for respondent on review.

Evohl F. Malagon and Malagon, Velure & Yates, Eugene, filed a brief amicus curiae for Oregon Workers Compensation Attorneys Association.

Mildred J. Carmack and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, filed a brief amicus curiae for Association of Workers' Compensation Defense Attorneys.

LENT, C. J.

## LENT, C. J.

This case is concerned with a claim for compensation under the Workers' Compensation Law for rhinitis and asserted sequelae. Two kinds of rhinitis are involved: allergic rhinitis and vasomotor rhinitis. The Court of Appeals found, and we therefore accept under the rule of *Sahnow v. Fireman's Fund Ins. Co.,* 260 Or 564, 491 P2d 997 (1971), that the two kinds of rhinitis are defined differently. Allergic rhinitis is a

> "pale boggy swelling of nasal mucosa associated with sneezing and watery discharge, attributable to hypersensitivity to foreign substances."

Vasomotor rhinitis is

> "congestion of nasal mucosa *without* infection or *allergy."* (Emphasis added.)

*Dethlefs v. Hyster Co.,* 55 Or App 873, 876, 640 P2d 639 (1982). The Court of Appeals, reversing the Workers' Compensation Board (Board), held that the claim was to be accepted and "benefits" were to be paid to claimant for his vasomotor rhinitis and related headaches.

We allowed review to determine initially whether the Court of Appeals has inconsistently interpreted the text of ORS 656.802(1)(a)[1] and, if so, to arrive at an interpretation to be applied henceforth. ORS 656.802(1)(a) provides:

> "(1)   As used in ORS 656.802 to 656.824, 'occupational disease' means:

> "(a)   Any disease or infection which arises out of and in the scope of employment, and *to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein."* (Emphasis added.)

It is the emphasized part of the statute to which the Board, purporting to apply a rule from *Thompson v. SAIF,* 51 Or App 395, 625 P2d 1348 (1981), gave an interpretation that caused us to believe clarification was necessary.

---

[1] We now perceive no necessity to address that question.

The facts and the changing positions taken by the employer in resisting this claim make it difficult to state anything other than dictum. The record disclosed the following history:

On December 1, 1978, claimant filed with the defendant a Form 801,[2] describing as the nature of his injury or disease "Dust. & Poll. Allergy." Somewhat more particularly, he gave the following description: "Dust & Poll. ect. [sic] I have headaches & shortness of breath. Sometimes vomiting."

On December 6, 1978, the employer's insurer, in appropriate spaces on Form 801, stated that the "injury" happened during the course of employment and that the claim was accepted as being for a nondisabling injury. The employer left blank space # 60, which provides: "If you doubt validity of the claim state reason."

By letter dated April 10, 1979, the employer's insurer wrote to the claimant about his "recent claim":

"We must notify you that we will be unable to accept your claim under our coverage. Our denial is based on the fact that it does not appear your condition was aggravated or arose out of and in the course of employment, either by accident or occupational disease, within the meaning of the Oregon Workers' Compensation Law."

On May 29, 1979, claimant requested a hearing to "protest denial of April 10, 1979." In a letter to the Board dated June 7, 1979, the employer's insurer's attorney stated "that the denial of April 10, 1979 is correct and should be affirmed." The employer's insurer, by letter dated January 21, 1980, took another position:

"We are now amending our earlier denial and stating that we do not feel that your disability in relating to the occurrence of November 30, caused any temporary disability and/or permanent partial disability relating to the incident * * *."[3]

---

[2] This is the prescribed form for filing a claim for compensation under the Workers' Compensation Law. It contains 60 spaces to be completed, some by the claimant and some by the employer or insurer, to yield rather concisely much pertinent information about the claim and the employer's response thereto.

[3] The meaning of the letter is a little hard to discern because it essentially states that claimant's "disability [did not cause] any * * * disability."

Hearing before the referee commenced on January 28, 1980, and the employer's insurer's counsel, referring to the letter of January 21, stated:

> "[W]e were amending the prior denial, stating we do not feel this is related to the occurrence which caused him to receive the temporary total disability and permanent partial disability, therefore, we deny benefits in relationship to any temporary total disability and permanent partial disability."

On June 27, 1980, the referee, in his opinion and order, stated:

> "This is an appeal from the denial of claimant's claim and the only issue is whether or not claimant's headaches, nausea, vomiting, shortness of breath, dizziness, allergic rhinitis and vasomotor rhinitis are causally related to exposure to dust, smoke, fumes, pollutants, iron dioxide and particulate matter at work."

The referee found that claimant's allergic rhinitis, arteriosclerosis and "labrynthian" disease were not causally related to his employment. The referee found that claimant's:

> "employment was *a substantial contributing cause* to his vasomotor rhinitis and that the vasomotor rhinitis was a substantial contributing cause of claimant's headaches." (Emphasis added.)

The referee accordingly ordered that "the claim of vasomotor rhinitis and headaches" be remanded to defendant for acceptance and payment of "benefits" pursuant to law. The referee opined that there had been a permanent change in claimant's condition that was causally related to his employment, that his vasomotor rhinitis and headaches were compensable and "that neither of defendant's denials can be sustained."

The employer requested Board review, ORS 656.295, asserting "that the denials issued by" the employer were correct. In its brief on Board review, the employer wrote:

> "The employer and carrier *do not contend* that the vasomotor rhinitis or irritative rhinitis is not related to the Claimant's employment, but that its relationship resulted in only the need for medical treatment but no time loss or permanent disability.
>
> "* * * * *

"In summary, the employer and carrier are *not contending that Claimant did not sustain an occupational disease* by the inhalation of smoke at work however, that exposure at most required medical treatment, but no temporary total disability nor any permanent change in the Claimant's condition." (Emphasis added.)

In its order on review, dated June 19, 1981, the Board specifically agreed with the referee's finding of fact that claimant's employment was a substantial contributing cause of his vasomotor rhinitis and headaches, but interpreted the law to be that "substantial contributing cause" was not the proper test of compensability for occupational disease. The Board interpreted *Thompson v. SAIF,* 51 Or App 395, 625 P2d 1348 (1981), to stand for the rule that "the proper test is whether the disease was caused solely by the work environment." The Board found that claimant's "rhinitis" was not caused solely by his work environment but, rather, "both on-work and off-work exposures contribute to that condition." The Board ordered:

"The Referee's order dated June 17, 1980 is reversed and the employer's denial is reinstated."

In its opinion, the Court of Appeals acknowledged that the Board's decision was based upon the Board's interpretation of *Thompson v. SAIF, supra,* but never expressly stated whether that interpretation was accurate.[4] Rather, the Court of Appeals quoted from its decision in *SAIF v. Gygi,* 55 Or App 570, 639 P2d 655 (1982), *rev den* 292 Or 825 (1982), not yet decided at the time the Board acted herein:

"We conclude that ORS 656.802(1)(a) does not require that the occupational disease be caused or aggravated solely by the work conditions. If the at-work conditions, when compared to the nonemployment exposure, is *the major contributing cause* of the disability, then compensation is warranted." (Emphasis added.)

55 Or App at 877. Upon the authority of *Gygi,* the Court of Appeals held that the Board had erred in ruling that the claimant must show that his disease was caused solely by the work environment. Applying the rule of *Gygi* to the evidence, the

---

[4] *Thompson v. SAIF,* 51 Or App 395, 625 P2d 1348 (1981), was decided by the Court of Appeals panel of Richardson, P. J., and Thornton and Buttler, Judges. The case at bar was before three judges, two of whom were Richardson and Thornton.

Court found that claimant had established that his employment was the major contributing cause of his vasomotor rhinitis and headaches. The Court found that the claimant had failed to establish that his allergic rhinitis, arteriosclerosis and "labyrinth" disease were causally related to his employment. The Court remanded the cause for acceptance and payment of "benefits" for the vasomotor rhinitis condition and related headaches.

■ At the outset of this opinion, we noted that an issue of law is difficult to reach other than as dictum. We say that because neither the Board nor the Court of Appeals dealt with the case as it was actually presented by the issue joined upon the record before the administrative agency. Both dealt with the case as if the employer had never conceded that claimant had sustained a compensable occupational disease. The employer did so concede, both to the referee and to the Board. The employer, by the letter of January 21, 1980, by the opening statement to the referee and by the brief to the Board on review, specifically and expressly conceded that the claimant had sustained an occupational disease and was entitled to medical services. Medical services are included in the term "compensation." ORS 656.005(9). In other words, the employer conceded that this claimant had sustained a "nondisabling compensable injury," which is defined as an injury which requires medical services only. ORS 656.005(8)(c).[5] The employer, in so many words, told the Board that the employer was only challenging any finding that the claimant had sustained any disability, temporary or permanent. In its brief to the Board, the employer stated:

"The Board should be advised that this case was originally denied on April 10, 1979, and that denial was based on the proposition that the Claimant's condition was not aggravated or arose out of and in the course of employment, either by accident or occupational disease. Subsequently thereto, on January 21, 1980, the employer and carrier amended the previous denial stating that Claimant's occupation did not cause any temporary total disability and/or any permanent partial disability. By the language of this amended denial *it is clear that*

_____

[5] An occupational disease is considered an injury under the Workers' Compensation Law except as may be provided otherwise in the Occupational Disease Law. ORS 656.804. *Weller v. Union Carbide,* 288 Or 27, 31, 602 P2d 259.

*the employer and carrier was accepting a claim for medical
benefits as a result of Claimant's exposure at work but that the
exposure at work didn't cause any temporary total disability
or any permanent partial disability. This* amended *denial can-
not be construed as a denial in the alternative but as the sole
denial which was the subject of hearing and now the subject of
this appeal.* [Emphasis added.]

"The issues before the Board on this appeal are whether or
not Claimant suffered any temporary total disability as a
result of his exposure at work and in the event that there was
no temporary total disability due the Claimant whether or not
he had any permanent partial disability as a result of Claim-
ant's exposure. The Referee committed reversible error when
he found that Claimant not only sustained a temporary total
disability but also had a permanent change in his condition."

Despite the fact that there was no issue as to compen-
sability of this claim, the Board decided that the rule of law
under *Thompson v. SAIF, supra,* was that the "work environ-
ment" must be the sole cause of the disease for it to be compen-
sable. Upon its review of the evidence, the Board then pro-
ceeded to ignore the fact that it was dealing with two kinds of
rhinitis. The term "allergic rhinitis" is never mentioned in the
Board's Order on Review, despite the overwhelming evidence
that claimant suffered from both allergic rhinitis and vas-
omotor rhinitis. In this respect, the Board wrote:

"Claimant does not, and on this record could not, argue his
rhinitis is caused solely by his work environment. Based on
tests one doctor found claimant 'quite strikingly' allergic to
such things as house dust and freshly-mown grass. It is impos-
sible to separate the effects of on-work and off-work exposure
in causing claimant's condition. But it is inescapable that both
on-work and off-work exposures contribute to that condition.
Under *Thompson,* this is not enough for the condition to be
compensable."

The Board thereupon ordered that the referee's order be
reversed and that "the employer's denial is reinstated." What
denial? The answer must be the denial that the employer had
expressly disavowed making. To say the least, the Board's
treatment is puzzling.

The claimant then sought judicial review, ORS
656.298, and the employer, quite understandably, caught the

lateral pass tossed by the Board, took off down the sidelines and asserted the position that claimant had sustained no occupational disease. In briefing the case for the court, the employer seemed to take the position that the Board was correct on the law but that some of its language in the decision was unfortunate.

*Amici curiae* briefs were filed in the Court of Appeals, one by the Oregon Workers Compensation Attorneys Association and one by the Association of Workers' Compensation Defense Attorneys. The claimants' Bar's brief traced the history of occupational disease legislation in Oregon and drew the correct conclusion that over the years the legislature had considerably broadened the coverage. *Accord, James v. SAIF,* 290 Or 343, 624 P2d 565 (1981). The brief discussed the *Thompson* and *James* decisions and from them would draw, as being correct, the rule applied by the referee in the cause at bar, i.e., that the claim is compensable if a worker suffers from a disease, and "on-the-job" exposure is a "material" contributing cause of the disease or aggravation of an underlying condition.

In its amicus brief, the defense Bar criticized both the referee and the Board as having applied incorrect tests. The brief argues that the referee's test of "substantial contributing cause" flies in the face of the text of the statute and that the Board's test of "sole" causation is more restrictive than either the text of the statute or the decisions of the courts require. Amicus, based upon the text of the statute and upon the decisions in *James* and *Thompson,* suggested the following as the correct analysis:

"1.  Where the finder of fact cannot determine from the evidence whether or not the work environment was a cause of the disease condition, the claimant has clearly not carried the burden of proving compensability.

"2.  Where the weight of the medical evidence establishes that exposures both on and off the job bore some causal relationship to the workers' condition, the claimant can carry the required burden if the evidence also establishes two additional elements:

"a.  The off-the-job exposure is substantially different in some way that is *significant in light of the causative mechanism of the particular disease.* [Emphasis added.] This will normally require medical evidence.

"b. The on-the-job exposure is of a kind which the worker does not *ordinarily* [original emphasis] encounter anywhere but on the job. This will normally be a matter for lay testimony."

Amicus then urged the Court of Appeals to review the evidence *de novo* in the light of the suggested test.

The suggested analysis is seductive. It appears to take account, on a step-by-step basis, of the factors statutorily required to be established to present a compensable claim under the Occupational Disease Law. It is flawed, however, by imprecision in terminology. It speaks of "disease condition" and "condition," while the statute refers to a "disease or infection."[6] The difference in terminology prevents one from tracking the words of the statute in the process of analysis.

The statutory text requires for compensability that a disease meet two requirements: (1) The *disease* must arise out of and in the scope of employment, and (2) the *disease* must be one to which the employe is not ordinarily subjected or exposed other than during a period of regular actual employment "therein."[7] As usual, our task is to seek to discern legislative intent.

It is apparent that given the broad range of "disease" or "infection" with which claims under the Occupational Disease Law may be concerned, administrative and judicial holdings concerning a particular claim may not be transferrable to the subject matter of other claims. In other words, as the emphasized language from amicus' brief recognizes, decisional language appropriate to the issue of compensability of a particular disease may not be relevant to another disease and different circumstances. See, *James v. SAIF, supra,* 290 Or at 351.

It should also be kept in mind that a disease or infection may give rise to a compensable claim for injury rather

---

[6] Those words bear the judicial gloss of our decisions in *Beaudry v. Winchester Plywood Co.,* 255 Or 503, 469 P2d 25 (1970), and *Weller v. Union Carbide, supra.*

[7] We do not understand to what "therein" refers or how that word adds to the sentence.

than for occupational disease.[8] In such cases, the second requirement, that concerning exposure, is not applicable. *James v. SAIF, supra,* 290 Or at 348.

A claim may be for a non-infectious disease, such as a neurosis or other mental illness, as in *James*. A claim could be for an infectious disease, such as brucellosis contracted by a veterinarian whose vocation required contact with farm animals that did not occur off the job. A claim may be made for a disease of unknown causation. A claim may be made for a disease due to an employe's hypersensitivity to particular proteins. As in this case, a claim may be made for a vasomotor rhinitis from exposure to certain chemicals and particulates. We do not pretend that these examples are exclusive, for we may be sure that a case will arise that does not fit neatly into any of these categories.

It is medically accepted that a mental illness such as a neurosis may result from a kind of stress found both in the work place and at home. It may be that the worker is subject ordinarily to that kind of stress both on and off the job. Implicit in our decision in *James v. SAIF, supra,* is that one must then look either to the degree or to the quantum of stress on the job as compared to that off the job to resolve the issue of compensability.

As we noted in *James,* it is essentially the same analysis we applied in *Beaudry v. Winchester Plywood Co.,* 255 Or 503, 469 P2d 25 (1970). There the worker's pre-existing bursitis was aggravated. There the evidence from claimant's doctor was that although claimant's physical activities off the job could aggravate his bursitis, his "most traumatizing activity" was vibration encountered at his work station. We held that this evidence would support a finding that the aggravation of the bursitis was the result of a "situation" to which claimant was not ordinarily exposed or subjected other than in the course of his regular employment. Id., 255 Or at 515.

---

[8] For a discussion of cases concerning the compensabilty of disease prior to the enactment of the Occupational Disease Law in 1943, see Lafky, *Compensability of Occupational Disease Under Oregon Workmen's Compensation Law,* 2 Willamette L. J. 16 (1962) and Lent, *Compensability of Non-occupational Disease,* 2 Willamette L. J. 24 (1962).

The analysis employed in *Beaudry* and *James* is not appropriate to the claim of a worker who suffers an indivisible disease that is the result of two *kinds* of causative agents, both ordinarily encountered, causative agent "A" on the job and causative agent "B" off the job, where either alone would have produced the same disease. The *text* of the statute does not provide a clear answer as to compensability. Did the legislature intend that this hypothetical claimant not be compensated because the disease he suffered was in part actually caused by agent "B"? Did the legislature intend that he should be compensated because the disease he suffered was in part actually caused by agent "A" and he did not encounter agent "A" at all except on the job? The *language* of ORS 656.802(1)(a) permits both questions to be answered in the affirmative. The general policy of the legislature as expressed in ORS 656.012[9] may be summarized as requiring industry to bear the costs of injury or disease to workers, just as industry must do with respect to damage to machinery, and to avoid "common law" litigation

---

[9] ORS 656.012 provides:

"(1) The Legislative Assembly finds that:

"(a) The performance of various industrial enterprises necessary to the enrichment and economic well-being of all the citizens of this state will inevitably involve injury to some of the workers employed in those enterprises; and

"(b) The method provided by the common law for compensating injured workers involves long and costly litigation, without commensurate benefit to either the injured workers or the employers, and often requires the taxpayer to provide expensive care and support for the injured workers and their dependents.

"(2) In consequence of these findings, the objectives of the Workers' Compensation Law are declared to be as follows:

"(a) To provide, regardless of fault, sure, prompt and complete medical treatment for injured workers and fair, adequate and reasonable income benefits to injured workers and their dependents;

"(b) To provide a fair and just administrative system for delivery of medical and financial benefits to injured workers that reduces litigation and eliminates the adversary nature of the compensation proceedings, to the greatest extent practicable;

"(c) To restore the injured worker physically and economically to a self-sufficient status in an expeditious manner and to the greatest extent practicable; and

"(d) To encourage maximum employer implementation of accident study, analysis and prevention programs to reduce the economic loss and human suffering caused by industrial accidents."

by granting to employers immunity against liability for "compensable injuries," ORS 656.018.[10] We believe it to be in accordance with that policy to construe the language of the subsection so as to bar compensability if causative agent "B" plays other than a minor part in producing the indivisible disease. To express it conversely, we conclude that if a causative agent at the work place and a causative agent away from the work place are different in kind and concur to cause an indivisible disease which requires medical services or causes disability, a claim therefor is compensable if the causative agent at the work place is the major cause of the disease.

■    We turn to the disposition of this particular case. The Court of Appeals found that this claimant's rhinitis was not an indivisible disease. That court found that the disease was divisible into vasomotor rhinitis and allergic rhinitis. There was evidence that claimant's vasomotor rhinitis and resulting headaches were caused by airborne pollutants at his work place. There was some opinion evidence that sources such as automobile exhaust fumes, which anyone may encounter, contain pollutants which could produce an "irritative" or vasomotor rhinitis. The Court of Appeals found as fact that the causative agents at the work place were "the major contributing cause" of the vasomotor rhinitis and resulting headaches.[11]

The claim for vasomotor rhinitis and related headaches is compensable, just as the employer (at the administrative stage) conceded, and the claimant is entitled to compensation by way of medical services for his vasomotor rhinitis and related headaches. Whether he has been disabled thereby, either temporarily or permanently, is a matter now to be reached in the administration and management of this claim in the manner specified by law.

Affirmed and remanded to the Workers' Compensation Board for further proceedings.

---

[10] It is arguable that an action for damages may be maintained against an employer of the worker if a disease or injury is not "compensable."

[11] On the other hand, the Court of Appeals found that claimant's allergic rhinitis was not caused by factors to which he was exposed at the work place. Although that court made no specific finding, inherent in its decision that the allergic rhinitis is not compensable is a finding that the claimant was ordinarily exposed away from work to house dust, house dust mites, new mown grass and other stimuli which produced his allergic response and the symptoms thereof encompassed in the diagnosis of allergic rhinitis.