Argued and submitted February 25, reversed and referee's order reinstated
October 7, 1987

In the Matter of the Compensation of
Jack W. Tucker, Claimant.

TUCKER,
*Petitioner,*

*v.*

LIBERTY MUTUAL INSURANCE COMPANY et al,
*Respondents.*

(WCB No. 81-09929; CA A40271)

743 P2d 761

Douglas A. Swanson, Portland, argued the cause and filed the brief for petitioner.

Allan M. Muir, Portland, argued the cause for respondents. With him on the brief were William H. Replogle and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

**NEWMAN, J.**

Claimant seeks review of an order of the Workers' Compensation Board which reversed the referee and held that claimant's bilateral foot condition was not compensable as an occupational disease. ORS 656.802. We reverse.

Claimant worked for employer as a pressman for approximately 12 years, beginning in 1969. As part of his job, he stood on a vibrating steel platform three to six hours each work day. In December, 1980, he began to experience problems with his feet and legs for the first time in his life. In September, 1981, his family doctor referred him to Dr. Neufeld, an orthopedic surgeon, who noted that claimant had painful feet and arches, for which he suggested arch supports. The supports, however, only partially and temporarily alleviated the painful condition. In January, 1982, claimant could not continue to work in the pressroom, because it was too painful to stand. He filed a claim.

Employer denied the claim, asserting that claimant had a preexisting condition—mildly deformed high arches or "pes cavus deformity"—which his employment had not worsened. The referee found that claimant's preexisting condition had worsened and allowed the claim. The Board reversed, concluding that only claimant's symptoms, and not his preexisting condition, had worsened. *See Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979).

The threshold question in this case is to identify the "occupational disease" from which claimant suffers, if any. Orthopaedic Consultants, to whom insurer referred claimant, diagnosed (1) bilateral moderately increased pes cavus deformity and (2) chronic foot strain. Dr. Tindall, a rheumatologist, to whom Neufeld referred claimant, reported:

> "Chief Complaint: Muscle Spasm. * * * Assessment: Leg and back pain which appears to be more of a mechanical problem with the patient having very loose ligaments in his left ankle and left knee allowing him to have an abnormal gait and exacerbating joint pain in these areas as well as his back."

She also wrote:

> "I suspect because of his foot structure that he has some structural problems with his feet and ankles that have allowed

him to be susceptible to the type of problem which he is now having."

Neufeld wrote that claimant suffers from "painful feet" related to "mechanical stress." He diagnosed claimant's high arches as the source of the mechanical stress and pain and said that the structure of claimant's feet made him more susceptible. He wrote:

"My basic diagnosis is that of bilateral cavus feet which have become painful. * * * The pain has been fairly consistently related to mechanical stess."

He also stated:

"My opinion is that this is a developmental problem involving his cavus feet. It is my opinion that feet such as [claimant's] are more subject to having difficulty from activities, etc., due to their configuration."

We find that claimant's occupational disease is chronic foot strain. The diagnoses of Tindall and Orthopaedic Consultants are not inconsistent with Neufeld's diagnosis, as they each describe the mechanical stresses that caused claimant's foot strain. The medical testimony shows that claimant's pes cavus deformity is not his occupational disease; it is a developmental structural problem. It made claimant more susceptible to the effect of standing in the pressroom on the steel platform for long hours.

The Board believed that claimant's occupational disease is the deformity itself. It relied on Neufeld's characterization of claimant's condition as a developmental "pes cavus deformity," which had not worsened, but had only become symptomatic. Neufeld wrote that "[claimant] has a job aggravated situation. This is an aggravation of a preexisting condition" and later concluded: "I do not have any objective evidence of worsening of the underlying cavus foot problem. It is the pain relating to that condition rather than any change in structure that has occurred." That conclusion, however, is not inconsistent with our understanding. He does not state that the shape of claimant's feet had changed; he has described a chronic painful experience, to which claimant's structural problems made him susceptible. We read Neufeld's references to an "aggravation of a preexisting condition" and to "symptoms" as consistent with Orthopaedic Consultants' identification of a chronic foot strain.

Moreover, claimant's work is the major contributing cause of his strain. *See* ORS 656.802. *Dethlefs v. Hyster Co.,* 295 Or 298, 667 P2d 487 (1983). Neufeld stated on December 28, 1982, that claimant had a "job aggravated situation." On March 13, 1983, he wrote:

> "[Claimant's] feet have worsened during his employment as a pressman for the Oregonian * * *. I think one can say beyond reasonable doubt that the patient's increased time on his feet on his job has brought on his symptoms earlier than they would have if he would have had a sedentary-type of job sitting most of the time."

On May 17, 1983, Neufeld stated:

> "I think it is medically probable that his pain has been accelerated by his job and being on his feet. If he had not been on his feet on a continuing basis, I do not feel he would have had the severity of symptoms that he is having at the present time.
>
> "His worsened condition has not improved significantly since he has been off his job, and it appears that his condition is permanent in that he will not be able to go back to any type of job where he has to stand on his feet any length of time."

Tindall stated:

> "[Claimant's] work was a major cause of worsening of his disease."

Orthopaedic Consultants did not express an opinion on causation but stated that "working on a hard surface continuously was [not] advisable for this man." Claimant did not have problems with his feet until he had worked for years on the pressman's job.

This situation differs from an occupational disease where only the symptoms, not the underlying condition, have worsened or where the underlying condition has worsened, regardless of the job. *See AMFAC, Inc. v. Ingram,* 72 Or App 168, 174, 694 P2d 1005, *rev den* 299 Or 37 (1985). There was no medical evidence that claimant's foot strain probably would have occurred if he had not stood for long hours on his job on a vibrating platform.[1]

---

[1] Neufeld could only speculate that, "[i]f [claimant] had been at a job sitting most of the time, it *might have been* months or years before he developed problems." (Emphasis supplied.)

Reversed; referee's order reinstated.