Argued and submitted April 20, affirmed February 24, reconsideration denied April 22, petition for review denied May 24, 1988 (305 Or 672)

In the Matter of the Compensation of
Margaret F. Blakely, Claimant.

BLAKELY,
*Petitioner,*

*v.*

SAIF CORPORATION et al,
*Respondents.*

(WCB 84-02190; CA A40273)

750 P2d 528

David C. Force, Eugene, argued the cause and filed the brief for petitioner.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondent SAIF Corporation. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Jerry K. Brown, McMinnville, argued the cause for respondents Medford School District and Western Employers' Insurance Co. With him on the brief was Cummins, Cummins, Brown, Goodman & Fish, P.C., McMinnville.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Claimant seeks review of a Workers' Compensation Board order affirming the referee and holding that claimant failed to prove that her bilateral carpal tunnel syndrome was compensable. On *de novo* review, we affirm.

Between 1974 and 1980, claimant worked as a custodian for the Medford School District (District). Her duties included wiping walls and windows, waxing floors and doing various other cleaning activities.[1] In 1980, she was promoted to head custodian, a position which required maintenance work, but less cleaning. In September, 1981, she sustained a compensable injury to her lower back.[2] She returned to work in a part-time position in the spring of 1982, and to a full-time position in July, 1982. Following her return to work, her duties were basically the same as when she was only a custodian. Her activities outside work did not require a similar degree of hand use. Near the end of 1982, she began to experience intermittent numbness and tingling in her hands, worse on the right, which progressed and eventually became painful. She had not experienced any such symptoms previously.

In March, 1983, claimant complained about the symptoms to several doctors, all of whom were treating her for her 1981 back injury. Dr. Campagna noted that the hand symptoms were worse after a day of work and while driving. Her complaints persisted, and Campagna performed motor nerve conduction studies in December, 1983. He diagnosed bilateral carpal tunnel syndrome secondary to claimant's occupation. He performed right and left carpal tunnel decompressions in January and February, 1984. Claimant filed an occupational disease claim with Western Employers, which denied the claim. SAIF was joined as a necessary party by the referee at a hearing convened to contest Western Employers' denial.

---

[1] The referee described claimant's duties as:

"wiping walls and windows, about 45 minutes a day; stripping and waxing floors; cleaning under chairs and desk as she tipped or moved them with the left hand while she held a long handled mop or broom with her dominant right hand; buffing floors with a buffer that she gripped with both hands; lifting bookcases, desks and sewing machines while cleaning them and the area around them; pushing 'heavy carts' up ramps."

[2] At that time, SAIF was the responsible insurance carrier for District. Western Employers assumed compensation coverage for District on July 22, 1982.

■        Claimant argues that her carpal tunnel syndrome arose out of her employment with District during the time when Western Employers was the responsible carrier. In order to establish that the syndrome is compensable, she must prove by a preponderance of the evidence that her condition is an occupational disease. ORS 656.802(1)(a); *Clark v. Erdman Meat Packing,* 88 Or App 1, 744 P2d 255 (1987). To do so, she must show that her work activities were the major contribut-. ing cause of either the onset or the worsening of her underlying condition. *Dethlefs v. Hyster Co.,* 295 Or 298, 667 P2d 487 (1983); *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1980).

■        The medical evidence is conflicting. All four of the doctors who offered opinions in this case diagnosed the condition as carpal tunnel syndrome. There was no consensus, however, regarding the cause of claimant's condition. Campagna, her treating physician and a neurosurgeon, concluded that her "work activities as a custodian were the major contributing cause of her bilateral upper extremity disability." However, there is no evidence that Campagna was aware of the details of claimant's duties as a custodian or of her non-work activities. Further, the persuasiveness of his conclusion is reduced, because he did not offer any explanation as to how her duties could have caused her condition.[3] *See Moe v. Ceiling Systems,* 44 Or App 429, 606 P2d 644 (1980).

        The testimony of Dr. Gell, a rheumatologist, who examined claimant several months after her surgery, also is not persuasive. He testified that her work activities could have led to clinical signs of carpal tunnel syndrome. However, although he found that her work was a factor in causing her

---

[3] Claimant appears to argue that, under ORS 656.310(2), Campagna's written report stating that her condition was causally related to her work, established a *prima facie* case for compensability. She misconstrues the statute. ORS 656.310(2) states that

"[t]he contents of medical, surgical and hospital reports presented by claimants for compensation shall constitute *prima facie* evidence *as to the matter contained therein* * * *." (Emphasis supplied.)

Although the statute provides that a doctor's testimony is unnecessary if a report is provided, the statute does not free a claimant from the burden of proving compensability by a preponderance of the evidence. Claimant also requests that we take judicial notice of the fact that it would have been extremely expensive for claimant to secure Campagna's live testimony in order to further explain his conclusions. That is not a proper fact for judicial notice. *See* OEC 201(b).

condition, he stated that he did not know if her work activities were the major contributing cause of her condition.

The reports of a second neurologist, Dr. Rosenbaum, were also admitted into evidence. In the first report, written several months after claimant's surgery, Rosenbaum stated that, on the basis of claimant's history, the "medical probability" is that claimant had a work-related carpal tunnel syndrome arising from her occupation, rather than from a specific injury. However, in a second report, written nearly a year later, he stated that he could not decide what had caused the syndrome. He indicated that she "might have had" a normal median nerve until 1982, and her return to work possibly related to a change in duties, "might have" caused the development of her condition or, in the alternative, she "might have had" an underlying abnormal asymptomatic median nerve of unknown duration, in which case her work activities would not have caused the underlying abnormality, but may have resulted in the symptoms of pain, tingling and numbness.

Dr. Nathan, an orthopedic surgeon who specializes in hand surgery and who had examined claimant, testified that, in his opinion, her work activities were not the major contributing cause of her carpal tunnel syndrome. His rationale, based on his studies of this disease, was that the disease is present in a large number of people and, as part of the natural aging process, eventually becomes symptomatic, regardless of the person's occupation. He concluded that, because of claimant's age and sex, she fell into a high risk group. He further noted that, if her work was the cause, he would have expected symptoms to have developed shortly after her employment started, rather than seven years later.

We conclude that claimant has not sustained her burden of establishing a causal connection between her employment and the onset of her condition. Although we express no view about Nathan's underlying theories, his entire testimony, considered with the conclusory or equivocal opinions of the other doctors, persuades us that claimant did not meet her burden of showing that her work activities were the major contributing cause of her condition.

■       Claimant also failed to prove any worsening of an underlying carpal tunnel condition. Although Rosenbaum suggested that she may have had an underlying condition

before her return to work in 1982 and that work exacerbated her symptoms, he did not discuss whether the work resulted in a worsening of the condition. *See Weller v. Union Carbide, supra.*

Finally, claimant contends that her carpal tunnel syndrome is compensable as an aggravation of her 1981 compensable injury. She argues that she would not have developed the syndrome but for the fact that her 1981 injury resulted in her extended absence from work and her inability to resume her position as head custodian. There is no persuasive evidence to support this argument.

Affirmed.