Argued and submitted November 18, 1991, affirmed January 22, reconsideration denied April 15, petition for review denied May 26, 1992 (313 Or 300)

In the Matter of the Compensation of
Thomas F. Scott, Claimant.

SAIF CORPORATION
and General Tree Service,
*Petitioners,*

*v.*

Thomas F. SCOTT,
*Respondent.*

(89-03612; CA A67752)

824 P2d 1188

David L. Runner, Assistant Attorney General, Salem, argued the cause for petitioners. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Steve Brischetto, Portland, argued the cause for respondent. With him on the brief was Baldwin & Brischetto, Portland.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DURHAM, J.

**DURHAM, J.**

Employer seeks review of an order of the Workers' Compensation Board that set aside its denial of claimant's occupational disease claim. The issue is whether the order is supported by substantial evidence.

■■ Claimant asserts that he suffers from allergic sensitivities due to his exposure to the chemicals colophony and thiuram during his employment between July, 1977, and June, 1978. Employer correctly acknowledges that, under ORS 656.202(2) and *Johnson v. SAIF*, 78 Or App 143, 146, 714 P2d 1098, *rev den* 301 Or 240 (1986), the compensability of claimant's disease is controlled by the version of the Occupational Disease Law, that was in effect in 1978. At that time, ORS 656.802(1)(a) provided:

"(1)  As used in ORS 656.802 to 656.824, 'occupational disease' means:

"(a)  Any disease or infection which arises out of and in the scope of employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein."

Claimant bears the burden of establishing that his disease arose out of and in the scope of employment and that it is one to which he was not ordinarily subjected or exposed other than during his employment. *Dethlefs v. Hyster Co.*, 295 Or 298, 307, 667 P2d 487 (1983). If the disease is caused by both on-the-job and off-the-job agents, a claimant must establish that the agent at work was the major contributing cause of the disease. *Dethlefs v. Hyster Co., supra*, 295 Or at 310; *Clark v. Erdman Meat Packing*, 88 Or App 1, 5, 744 P2d 255 (1987), *rev den* 305 Or 102 (1988).

Claimant was raised in the Willamette Valley and has been exposed to pine trees all of his life. In 1975 and 1976, he worked at a dairy in Idaho, tending cows and calves and serving as a handyman. He did not experience any significant skin rashes during that time.

In July, 1977, claimant began working for employer in Portland, spraying pesticides and herbicides and trimming trees and bushes, including pine trees. He frequently wore rubber clothing while working. Within two months, he developed a rash on the back of his neck and soon developed a rash

on the back of both hands. By the time that he quit in June, 1978, he had experienced a skin rash on his neck three times and a rash on his hands and, perhaps, on a forearm.

Claimant returned to his previous job in Idaho. On July 2, 1979, he was treated for acute dermatitis on one foot and around several fingers. A physician indicated that the cause was unknown. In September, 1979, claimant was diagnosed as having contact dermatitis associated with his use of iodine solution to wash cow udders. In April, 1980, claimant was found "positive to Thiuram," and a doctor concluded that

> "at least part of his problem may be a rubber allergy. Certainly has used rubber gloves in the past. Evidently this is not the only problem here."

On November 8, 1979, claimant filed a compensation claim in Idaho, alleging that he suffered a "skin rash on hands due to exposure to iodine water used in washing cows." The claim was accepted, and he received time loss for the 12 days of work missed. The Idaho claim was closed, and there is no record that claimant sought to have it reopened or reinstated.

■    In December, 1980, while in Idaho, claimant suffered a severe eruption of dermatitis on his hands, arms, legs, feet and back. He advised employer that he believed that his condition was due to his exposure to pesticides and herbicides during his work in Oregon. Employer referred claimant to a specialist in toxicology at Oregon State University, who advised him that the contact dermatitis was probably not caused by exposure to chemical agents. Claimant was treated at Oregon Health Sciences University in December, 1980, and January and February, 1981. He continued to suffer skin problems. On November 30, 1988, he was examined by a specialist, who concluded:

> "[Claimant] is totally disabled from chemically induced dermatitis and multiple chemical sensitivities."

Claimant filed his claim for compensation for "chemically induced dermatitis" on his entire body and dated the onset as "1977-1978."

Employer contends that there is not substantial evidence to support the Board's finding that claimant's work

for it was the major contributing cause of his chemical sensitivity and dermatitis during and after his employment. We conclude that substantial evidence exists. Claimant's doctor testified that employment with employer was a major cause of the allergy to colophony.

The record also contains substantial evidence that claimant's employment is the major contributing cause of his sensitivity to thiuram, a common ingredient in rubber products and pesticides. The record indicates that he was exposed to rubber clothing for approximately 50 percent of his working time. Employer contends that the record contains no evidence that the specific items of rubber clothing worn by claimant during his employment contained thiuram. However, the presence of thiuram in rubber products as a common ingredient, the degree of claimant's exposure to rubber clothing, the timing of the onset of his symptoms and the results of the 1980 patch test which indicated that claimant was allergic to rubber and thiuram, support the medical opinion that claimant's skin disease was caused by his exposure to rubber clothing. The evidence on causation supports the Board's conclusion that claimant's

> "work at General Spray Service [now General Tree Service] was the major contributing cause of his sensitivity to colophony and thiuram * * *."

Employer argues that claimant was allergic to formaldehyde, which the Board concluded was unrelated to employment, and that he was exposed to colophony and thiuram from other sources off the job.

Medical evidence confirmed that claimant's clinical disease, contact dermatitis, was triggered by his chemical exposure during his employment. There is no evidence that claimant was allergic to formaldehyde until he tested positive during the patch test in 1980, or that the rashes and skin problems during his employment were caused by an allergy to formaldehyde. The evidence supports the Board's finding that claimant's early exposure to thiuram and colophony during employment "remains a material cause of his ongoing skin problems," even though the rashes had temporarily cleared by the time he left employment.

■      Employer contends that, because claimant received compensation in Idaho for a skin rash on his hands diagnosed as "allergic contact dermatitis," employer is not responsible under *Miville v. SAIF*, 76 Or App 603, 710 P2d 159 (1985). Employer is incorrect. The Board concluded that his Idaho claim was for a condition distinct from the one on which the Oregon claim was made. The Idaho claim was based on a skin rash due to exposure to iodine in the dairy job. The Oregon claim is based on skin problems due to an allergic reaction to colophony and thiuram. *Miville* requires a worker with an accepted Oregon industrial injury claim who suffers a worsening of that injury while working for an out-of-state employer to file a claim concerning the worsened condition in the other state. That rule does not apply here because claimant's Oregon injury is distinct from the out-of-state injury.

■      Employer also assigns error to the Board's ruling that this claim was timely filed. It argues that the claim is controlled by ORS 656.807 as it read in June, 1978,[1] when claimant left his employment, and that it is barred because it was not filed within five years after the last employment exposure. The Board found that claimant first received notice that his employment was the cause of his dermatitis on December 1, 1988, and the claim was filed on January 2, 1989. We conclude that the claim is controlled by the limitation in effect when the claim was filed.[2] *Holden v. Willamette*

---

[1] *Former* ORS 656.807(1) provided:

"Except as otherwise limited for silicosis, all occupational disease claims shall be void unless a claim is filed with the State Accident Insurance Fund or direct responsibility employer within five years after the last exposure in employment subject to the Workers' Compensation Law and within 180 days from the date the claimant becomes disabled or is informed by a physician that he is suffering from an occupational disease whichever is later."

[2] ORS 656.807 provides:

"(1) All occupational disease claims shall be void unless a claim is filed with the insurer or self-insured employer by whichever is the later of the following dates:

"(a) One year from the date the worker first discovered, or in the exercise of reasonable care should have discovered, the occupational disease; or

"(b) One year from the date the claimant becomes disabled or is informed by a physician that the claimant is suffering from an occupational disease.

"(2) If the occupational disease results in death, a claim may be filed within one year from the date that the worker's beneficiary first discovered, or in the exercise of reasonable care should have discovered, that the cause of the worker's death was due to an occupational disease.

*Industries*, 28 Or App 613, 616, 560 P2d 298 (1977). The Board's findings, which are not challenged by employer, demonstrate that the claim was timely filed under that version of the statute.

Affirmed.

---

"(3) The procedure for processing occupational disease claims shall be the same as provided for accidental injuries under this chapter."